## JOHN CAPERTON *v.* FREDERICK SCHMIDT.

JUDGMENT IN ACTION TO RECOVER REAL ESTATE.—A judgment rendered in an action to recover the possession of real estate, under our system of pleading and practice, is, as to all matters put in issue and passed on in the action, conclusive between the parties and their privies, and a bar in another action between the parties or their privies where the same matters are directly in issue.

LIMITATION OF BAR OF JUDGMENT.—The bar of a judgment and verdict in an action to recover the possession of real estate is limited to the rights of the parties as they existed at the time when it was rendered, and neither the parties nor their privies are precluded by the same from showing, in a subsequent action, that their rights have been varied or extinguished at a period after the rendition of the verdict and judgment.

PLEADING IN ACTION TO RECOVER REAL ESTATE.—Under our system of pleading, the plaintiff, in an action to recover possession of real estate, is not limited to any particular form of complaint, but the form may be adapted to the facts desired to be put in issue. Plaintiff may allege that he is seized of the premises, or of some estate therein, in fee, for life, or for years, or he may aver a former possession and ouster; but whatever is put in issue and determined is conclusive and final.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

Plaintiff recovered judgment in the Court below, and defendant appealed.

The other facts are stated in the opinion of the Court.

*Horace Hawes*, for Appellant.

The maxims that no one ought to be vexed twice for the same cause, and that it is the interest of the republic that there be an end to litigation, are common to the jurisprudence of all civilized countries. The rule has been so well given in the *Duchess of Kingston's Case*, cited in Greenleaf's Evidence, and in Broom's Legal Maxims, 246 (marg.), that it is the general text of authors and jurists.

In *Eastman* v. *Cooper*, 15 Pick. 285, the rule is thus stated: "The law applicable to the subject is well stated in Bull. N. P. 232, in the case of *Sherwin* v. *Clarges*. If a verdict be had on the same point and between the same parties, it may be given in evidence, though the trial were not had for the same lands; for the verdict in such case is a very persuading

evidence, because what twelve men have already thought of
the fact may be supposed fit to direct the determination of
the present jury. But, then, this verdict ought to be between
the same parties, because otherwise a man would be bound by
a decision who had not the liberty to cross examine; and
nothing can be more contrary to natural justice than that any
one should be injured by a determination that he, or those
under whom he claims, was not at liberty to controvert. But
it is not necessary that the verdict should be in relation to the
same land, for the verdict is only set up to prove the point in
question, and every matter is evidence that amounts to a proof
of the point in question." But no verdict shall be given in
evidence but between those who are parties or privies to it. (Id.)
And " it is not necessary that the fact to be proved by the
record should have been solely and specifically put in issue on
the former trial; it is sufficient if it was a fact essential to
the finding of that verdict." (Stark. Ev. 4 Amer. ed. 200.)

And it is not necessary that the form of the action in the
former suit should be the same as in the latter. Thus a recov-
ery *in an action of assumpsit is a good bar to any action
brought upon the same contract. (Slade's Case,* 4 Co. 94 B.)
" It is held that the nature of the judgment has no effect on
the operation of the rule, and a decree with regard to the
*status* of an individual will be equally conclusive with a deci-
sion upon a right of property as guardian, administrator,
naturalization of an alien, the adjudication of a descent or
pedigree." (24 Vermont, 42; Ib. 123; 1 Selden, 293; 1
Jones, 220.) It is equally well settled that the mode in which
the question is brought before the Court is immaterial if it be
actually decided. (*Kelly* v. *Pike,* 5 Cushing, 484.) The inflex-
ible and invariable rule is, that when the cause of action is
substantially the same, and is or might be sustained by the
same evidence, no change in the form of the suit or of the
pleadings shall avail to withdraw a matter which has once
been judicially determined from the estoppel of the adjudica-
tion. (*Baker* v. *Rand,* 13 Barb. 152; *Burkhead* v. *Brun,* 5
Sand. 154; *Chapman* v. *Smith,* 16 Peters, 144; 3 Wil. 304;

4 Rawle, 188 ; 2 Whart. 119.)   The rule is the same where the previous determination has been by the decree of a Court of equity. (*Jackson* v. *Hoffman*, 9 Cow. 371; *Owen* v. *Davidson*, 1 Watts, 149 ; *Montford* v. *Hunt*, W. C. C. R. 28 ; or *vice versa*, *Kingsland* v. *Spaulding*, 3 Barb. Ch. 141.)

In order that a judgment in one action be conclusive in another, it must appear with convenient certainty that the question in controversy in the second suit was litigated and decided in the first.   Where this is apparent on the face of the record, the mere production of the record is enough.   (17 Ala. 133 ; 4 Cow. 71 ; 14 Bar. 511.)

A judgment rendered on a point of law, when the facts are admitted by a demurrer or case stated, will be an absolute bar to renewal of the controversy in a subsequent proceeding. (*Perkins* v. *Moore*, 16 Ala. 17.)   And it is settled that the correctness of a judgment cannot be impeached on the ground that the law was mistaken by the Court or the facts wrongfully found by the jury, because the party has his remedy. (*Kelly* v. *Pike*, 5 Cush. 484 ; *Marsh* v *Pier*, 4 Rawle, 282 ; *Lloyd* v. *Barr*, 1 Jones, 41 ; 13 Bar. 152 ; 18 Ala. 281.)

Every judgment is *prima facie* a substantial and final determination of the matter in controversy or in issue, and this presumption cannot be overcome by extrinsic evidence, unless there is something on the face of the record to justify the admission.

The conclusive effect of a verdict is the same, whether it was rendered upon the evidence or in obedience to a technical rule of law, (*Green* v. *Clark*, 5 Denio, 497,) and a plea of a former recovery for the same cause of action cannot be answered by a replication that the decision was not on the merits, without showing that the proceeding was such that they could not have been decided. (*Agnew* v. *McElroy*, 10 S. & M. 552.)   The Court say that a defendant cannot escape the consequences of an adverse judgment on the ground that he had a good defense in fact, and relied inconsiderately on an untenable point of law.   So, where the plaintiff offers evidence in relation to a claim contained in one count of his

61

declaration, which evidence is rejected by the Court, and a general verdict is rendered, (the count to which the rejected evidence is applicable not having been stricken out,) the judgment thereon will be a bar to the claim so attempted to be established. (*Smith* v. *Whiting*, 11 Mass. 445 : *Gardner* v. *Buckbee*, 3 Cow. 120.) Former suit brought on promissory note, and successfully resisted on the ground of fraud. The verdict and judgment were held as conclusive evidence of the fraud in a subsequent suit on another note given for the same transaction, and in that case parol evidence was admitted to show (what did not appear from the record) that *on the former trial* fraud was the defense made, and the point on which the decision was founded. (So held in *George* v. *Gillespie*, 1 Iowa, 421 ; same principle in *Doty* v. *Brown*, 4 Cow. 71 ; *Chase* v. *Walker*, 26 Maine, 553. See, also, 7 Ga. 434 ; 19 Vt. 144 ; 18 Conn. 91.)

In *Aslin* v. *Parkin*, 2 Burr, 666, 668, (A. D. 1758,) which was an action for *mesne* profits, Lord Mansfield, in conformity with the opinion of all the Judges, lays down the following principles :

1. That by the judgment in ejectment the tenant is concluded in the action afterwards brought against him for mesne profits, and cannot controvert the plaintiff's title or possession.

2. That this judgment, *like all others*, only concludes the parties as to the *subject matter of it*. Therefore, beyond the time laid in the demise, it proves nothing at all; because, beyond that time, the plaintiff has alleged no title, nor could he be put to prove any.

The principles laid down by Lord Mansfield, in *Atkins* v. *Horde*, and *Aslin* v. *Parkin*, and which have been adopted in many American cases, form no exception to the general rule, which is applicable to all actions, and is eminently conservative of social order : that any fact which has been put in *issue* and judicially determined, shall never again be brought in question between the same parties. The principles laid down in the two cases referred to have reference only to the established form of pleading in the action of ejectment, in which

the *title* was never put in issue, but simply the present right of possession, which, in many cases that may be supposed, the lessee might have and enforce even against the owner of the fee. The action was brought to recover a term for years from which the tenant had been ousted, and no issue was ever made upon the title. It is true that it became the common method of trying title to land, but as no issue was formed upon title by the pleadings, the title came only *collaterally* and *incidentally* before the Court. (Bl. Com. B. 3, Chap. XI, Vol. 3, pp. 202, 205.) The record could present no evidence that any question of that nature had been tried or adjudicated upon. The action itself did not belong to the class of real actions. The subject matter of it—an estate for years—does not even ascend to the dignity of real property—it is only a chattel. It was not simply because it was a possessory action that it could not prejudice the right of property, but because upon the face of the record it did not in any manner *concern* the freehold, as the action by writ of entry or disseizin, and assize, which were likewise possessory actions, did. The latter were the remedies adopted for an ouster of the freehold, while the writ of ejectment was the appropriate remedy for an ouster of the term of years. But although the fee simple was not drawn in question by the pleadings in any of these actions, the judgment in each of them was nevertheless final and conclusive *quoad* the subject matter; for the principle of *res judicata pro veritate habetur* admits of no exception, either in the civil or the common law. Accordingly, it is laid down by Judge Blackstone (Com. Book 3, Chap. X, Vol. 3, p. 185,) respecting the writ of entry and the writ of assize, after pointing out a very unimportant distinction between them, that " these two remedies are in all other respects so totally alike, that a judgment or recovery in one is a bar against the other; so that when a man's possession is once established, by either of these possessory actions, it can never be disturbed by the same antagonist in any other of them." And again, he observes that a judgment in any possessory action, if obtained by him who hath not the true ownership, is held to be a spe-

cies of deforcement, which, however, binds the right of possession, and suffers it not to be ever again disputed, unless the right of property be also proved. (Ib. p. 191.) And again, he observes, respecting the writ of right, which lies only in favor of such as claim to be tenants of the fee simple, that after issue once joined in this action, the judgment is absolutely final; so that a recovery had in this action may be pleaded in bar of any other claim or demand. (Ib. p. 104) All this accords with the doctrine so clearly illustrated by Lord Ellenborough, in *Outram* v. *Morewood*, that the judgment in *every* action is conclusive as to all matters put in issue by the pleadings. If the plaintiff counts upon the fee simple, and issue is taken upon it, the title is concluded if there is any form of action or pleading by which it can be. If that is an action of ejectment in which *such* an issue is joined, then the action of ejectment has swallowed up all other actions affecting landed property. But, call it as you may, there can be no higher action than that in which such an issue is tried, inasmuch as there is recognized by our laws no higher estate in land than the fee simple. Although it be true, therefore, that the unsuccessful party in a *possessory* action at common law, might resort to an action of a higher nature (not to retry what was before tried, but) to try what was not in issue or litigated in the first action, yet no such resort is open where, as in our case, the highest right of property has already been in issue, tried, and determined.

In California, the common law forms of action, pleadings, and proceeding were never in force; for with the organization of our Courts, the Act to regulate proceedings in civil cases, passed April 22d, 1850, went into operation. (See Statutes of 1850, p. 428; Act to supersede certain Courts, etc., Ib. p. 80, Sec. 28, *et seq.*, and Sec. 41; Act to provide for holding the first county election, Ib. p. 81.) In some of the States where those forms of proceedings did once exist they have been abolished by a reformed code of practice similar to ours.

New York, where one trial and judgment is now conclusive in every case upon the matter in issue, gave us a model, and it

seems to have been substantially followed in Mississippi and
Georgia, in which States a verdict and judgment in an action
for the recovery of real property where the title is put in issue,
is held to be a bar to any subsequent action for the same cause.
(*Brewer* v. *Beckwith*, 35 Miss. [6 George] 467 ; *Sims* v. *Smith*,
19 Georgia 124.)

In Alabama the action of trespass " to try title as well as
to recover damages," prescribed by the Act of 1821, is not
conclusive on the title in a subsequent action, because that
Act expressly declares that " the laws now in force in relation
to the action of ejectment, except so far as relates to fictitious
proceedings therein, shall be applied to the action of trespass
to try titles." (*Vide Camp* v. *Forrest*, 13 Ala. 118 ; *Mitchel* v.
*Robertson*, 15 Ib. 412.)

In South Carolina, where the action of trespass to try titles
was substituted for the action of ejectment in 1791, one trial,
verdict, and judgment, is conclusive on both parties. (*Thomas*
v. *Geiger*, 2 Nott & McCord, 528.)

By our Practice Act there is but one form of civil action for
the enforcement or protection of private rights and the redress
of private wrongs, (Sec. 1.) No fictitious parties or forms are
to be used, but every action is to be prosecuted in the name
of the real party in interest, (Sec. 4) ; *all* the *forms* of plead-
ing and the rules for testing their sufficiency are those pre-
scribed by that Act, (Sec. 37) ; the pleadings are to state the
facts constituting the cause of action or defense, according to
the truth of the case, in ordinary and concise language, (Secs.
39–46) ; and " the judgment is the final determination of the
rights of the parties in the action or proceeding," (Sec. 144.)
Under these provisions the forms and fictions which consti-
tute the essence of the action called ejectment could not be
admitted in practice, and it is evident that the action of eject-
ment proper—that form of action to which Lord Mansfield
refers in the cited cases of *Atkins* v. *Horde* and *Aslin* v. *Par-
kin*—is not in use in this State. Nevertheless, the judgment
in that action, as in all others, was conclusive as to the sub-
ject matter of it as shown by the pleadings.

, *E. W. F. Sloan*, for Respondent.

It is a general rule of law, that neither a verdict nor judgment in ejectment concludes the parties *from questioning the title* in any subsequent contest about the same land. (*Botts* v. *Shield's Heirs*, 3 Litt. 36; *Aslin* v. *Parkin*, 2 Burrow, 668; *Jackson* v. *Diffendorf*, 3 John. 270; *Smith* v. *Sherwood*, 4 Conn. 280.)

*As to the subject matter*, however, a judgment in ejectment, like that in other cases, is conclusive upon the parties. But what is the subject matter of the action in ejectment? It is simply the *right of possession for a limited period*. The commencement of that period, under the former system of pleading, was *the date of the demise* laid in the declaration; it ended with the term. Hence, beyond the time laid in the demise, the judgment in ejectment proved nothing at all; " because, beyond that time the plaintiff has alleged no title, nor could he be put to prove any." (2 Burr. 668; *Garner* v. *Marshall*, 9 Cal. 270; *Yount* v. *Howell*, 14 Cal. 468.)

The alleged lease, though fictitious, became an admitted fact by the consent rule, which the defendant was obliged to enter into before he was permitted to defend.

The plea of not guilty put the plaintiff upon the trial to prove a right of entry in his lessor, the admitted demise constituting his right under the lessor. A recovery in ejectment being conclusive in an action against the tenant in possession for mesne profits, it was advisable for the plaintiff to lay the demise as far back as possible; that is, as far back as the lessor's title would permit.

On the trial in ejectment the plaintiff might rest upon proof that his lessor was actually possessed of the land at the time of the alleged demise; or he might show that he then had an existing legal estate either in fee simple, fee tail, or an estate for life, or years, or in remainder and death of tenant for life; and in doing so he might put in evidence any number of derivative title deeds from a great variety of sources, or introduce

any other legitimate evidence of a right of entry; and all this under the same count.

*The matter in issue is the right of possession only;* the nature of the estate upon which it depends, and the titles which go to sustain it are matters arising merely collaterally.

It has been assumed by appellant's counsel that under our system of pleading and practice, what is usually denominated ejectment is something more than a mere *possessory* action. No case, however, has been cited or reason adduced in support of the assumption.

In New York it is held that the character and form of the action of ejectment has not been changed by the code; that it still remained a possessory action as formerly, and that it can only be brought against the actual occupant. (*Van Buren* v. *Cockburn*, 14 Barb. 118; *Pulen* v. *Reynolds*, 22 How. 354.)

The conclusive effect of a judgment in ejectment under our system is even more limited than it was under the former. Independent of the time at which the plaintiff's right of entry is alleged to have accrued, he can recover in this State, provided he is able to show such right accrued to him at any time before action brought.

Thus it is said by the Court in *Yount* v. *Howell*, 14 Cal. 468: "The rule of the common law in relation to proof of a legal estate and right of entry at the demise laid in the declaration, has no application under our system." "In our practice it is sufficient if it appear that the plaintiff was entitled to the possession of the premises at the commencement of the action, and the date of the alleged seisin or possession and ouster become material only, when the question of mesne profits is involved."

"When mesne profits are claimed in an independent suit, the record of recovery in the judgment is as to the title *only evidence of the right of possession of the plaintiff at the commencement of the action in which the recovery was had.* With us the judgment is only conclusive of two points: the right of possession in the plaintiff, and the occupation of the defendant at the institution of the suit. Whatever beyond these

facts may be necessary in an independent suit to recover mesne profits, must be established by evidence outside of the record in ejectment."

Again, say the Court in *Garner* v. *Marshall*, 9 Cal. 270 : "Ejectment is a possessory action, and must be brought against the occupant. It determines no rights but those of possession at the time, and it matters not who has or claims to have the title to the premises."

It was suggested by appellant that *Hayes and Caperton* v. *Schmidt*, was a real action.

I see no reason why an action in the nature of the writ of right would not lie in this State. A distinction between the "recovery of real property" and the "recovery of the possession thereof," is clearly recognized in section six of our Statute of Limitations, which seems to me to contemplate the bringing of real actions. But there is no case of that character to be found in the reports of our State. Nor is it probable that there is a complaint on file in any of our Courts which would be a good count in the writ of right. In that action the demandant must count upon the *actual seizin* of him who was, in fact, last seized, setting forth correctly his own derivative title. If the right descended from his father, who, being once seized in fact, became afterwards disseized, he should count upon the seizin of his said father; then allege his own derivative right as heir at law. In such case, if he counted on his own seizin, never having been in fact seized, his action would abate, even though he proved his father's seizin and his right to inherit. But, if he sued again, counting on the seizin of his father, he could upon the same proof recover, for the judgment in the former action would be no bar. Though the parties be the same, and the land the same, yet the foundation of the right alleged would *not* be the same. Not only must the demandant count accurately, as to the fact of seizin, but he must also set forth his derivative right correctly. If he claims by inheritance, he must show that he is heir and *how*. (*Jayne* v. *Price*, 5 Taunt. 326 ; *Dumsday* v. *Hughes*, 3 Bos. &

Pul. 453 ; *Dowland* v. *Slade,* 5 East. 273 ; *Wells* v. *Prince,* 4 Mass. 64.)

"A material part of the count," says Reeves, "was the deducing of descent from the ancestor seized down to the demandant. No chasm could be left. If any was omitted in the descent ; if it commenced with one who never was in seizin ; if there was any error in the person, or if the name of any one mentioned in the descent was a *villein ;* in all these cases the action would abate, and the demandant would lose his suit." (1 Reeves' Hist. Eng. Law, 431, 432 ; *Denham* v. *Stephenson,* 1 Salk. 355 ; Roscoe on Real Actions, 19, 22, 177, 215, 323, 329.)

There can be no mistake as to what is actually put in issue and tried and determined in the writ of right. In ejectment, however, which is purely a possessory action, the plaintiff counts upon his own right of possession ; and on the trial he may sustain that right by any available evidence.

A verdict for the plaintiff establishes nothing but his right of possession for the time being, a right which may expire with the day of recovery. A verdict for the defendant establishes nothing except that the plaintiff did not have the right of possession when he commenced his action, though he might then have been the " owner in fee." It is consistent enough, with an existing leasehold estate in some one else, to say that the plaintiff is the owner in fee. Such ownership does not necessarily carry with it a present immediate right of entry.

That a verdict and judgment in ejectment in one action may, under certain circumstances, be given in evidence in a subsequent suit, is a proposition not questioned. But a proper case for the admission of such evidence rarely happens in practice, and hence only a few precedents of the kind are to be found in the reports.

From the statement of the case of *Doe ex dem. Strode* v. *Seaton,* 2 Cromp. M. and S. 728, it does not distinctly appear for what purpose the record of the former judgment was read in evidence. It is probable, however, that in all other

respects the case made by the evidence in the second action was the same as in the first. Upon such a state of proofs, the former verdict might, perhaps, with propriety be introduced as "persuasive evidence."

The only authorities referred to in that case are Buller's N. P. 232, and Bacon's Ab. Tit. Evidence, F. " What twelve men have already thought of the fact may be supposed fit to direct the determination of the present jury," is the reason there given.

It seems to place the verdict, as matter of evidence, on the same footing with the opinion of experts. Obviously there are cases in which evidence merely persuasive cannot be properly received.

Where, in one ejectment, the plaintiff recovered possession of the land from the defendant, and in a subsequent action by the same defendant against the plaintiff a question arises as to whether said plaintiff had entered lawfully, it would be clearly proper to read the former judgment in evidence, to show that he had entered under it, and therefore lawfully, as in *Jackson* v. *Rightmire*, 16 J. R. 314.

By the Court, SAWYER, J.

The complaint in this action alleges, that, on the first day of January, 1860, the plaintiff "was the owner in fee, and seized of and in the possession of" Block 142, in the City of Oakland, Alameda County ; that afterwards, on the 20th of January, 1860, " whilst said plaintiff was so seized in fee and possessed of said tract of land, the said defendant wrongfully and unlawfully entered into and upon said premises and unlawfully ousted and ejected said plaintiff therefrom, and still continues to withhold wrongfully from said plaintiff the possession of said premises," and prays judgment for restitution of the premises, and for damages.

The answer specifically denies the allegations of ownership and seizin, and the ouster, thereby putting the title and ouster in issue. It then affirmatively alleges, that, on the 20th of

December, 1858, in the District Court of the Third Judicial District, the plaintiff and one John C. Hays, claiming the said lands as tenants in common, commenced a suit against said defendant for the recovery of the same premises, claiming the same and the possession thereof, as owners in fee simple, the said defendant denying the ownership, title and right of possession of said plaintiffs, and setting up and claiming title in himself as owner in fee simple to the undivided forty eighty-first (40-81) parts of said premises; that the right and title of plaintiffs and of the defendant in said suit to the said premises so in controversy, and their respective rights and claim to the possession thereof, as owners or otherwise, were duly put in issue by the pleadings, and were fully litigated, tried, and finally determined in said suit; that after a full trial, it was finally adjudged by the Court in said suit that the plaintiffs do have and recover the possession of the undivided forty-one eighty-first (41-81) parts of said premises, according to their undivided interests as tenants in common with the said defendant, and that the said defendant do have and recover against said plaintiffs the undivided forty eighty-first (40-81) parts of said land and premises, and for possession thereof as co-tenants with said plaintiffs; that the right, title and claim to the said premises now set up by the said plaintiff, Caperton, are the same that were tried and determined in said suit; that the interest of said John C. Hays has been transferred to said Caperton since the final judgment aforesaid, which judgment is still in full force; and that said Caperton has no right, title or claim to said premises, or to the possession thereof, other than that which was tried and determined in manner aforesaid. The answer then insists that the said matter so adjudged ought not to be again brought in question; acknowledges the title of plaintiff to the forty-one eighty-first parts adjudged to said Caperton and Hays, and the right of the plaintiff as co-tenant to that extent to enter into possession with said defendant; and avers that he never withheld the possession thereof from said plaintiff. The answer also avers, that defendant is owner in fee of the undivided forty eighty-first parts, of which he is

lawfully in possession, and disclaims any interest, claim or possession as to the rest.

The plaintiff on the trial relied upon a title derived from Luis Peralta, the original grantee of the Mexican Government, through his sons Vicente and Domingo Peralta, to whom the grant was confirmed by the Land Commissioners, and the Courts of the United States on appeal. Plaintiff also proved that defendant had been in possession since 1857.

The defendants, to maintain the issues on their part, offered in evidence the record of the former suit set up in the answer; to the introduction of which, the plaintiff objected. The Court sustained the objection, and defendant excepted. This ruling is assigned as error.

The complaint in the record offered in evidence, and excluded by the Court, avers that, " on the 27th day of September, 1858, the said plaintiffs (Caperton and Hays) were the owners in fee simple and seized of, and as such entitled to the possession of" * * * Block 142, in the City of Oakland, Alameda County ; that while so seized and possessed and entitled to the possession the said defendant, (Schmidt,) on said day, " unlawfully and without title or right trespassed and entered upon said premises and took unlawful possession of the same, and he withholds and detains the same without right or title," etc., and prays judgment " for the restitution and recovery of said premises ;" also for damages, etc.

The answer " denies that the said plaintiffs were or are owners in fee simple, or seized of, or were or are entitled to the possession of the tract of land and premises mentioned in the complaint," etc. ; denies that " he ever unlawfully, or without right or title, trespassed or entered upon said premises, or any part thereof, or took unlawful possession of the same, or dispossessed said plaintiffs," etc.

The defendant then sets up a claim to an undivided one half of the premises, averring that he is lawfully in possession of said undivided one half, and lawfully entitled to the possession thereof, in common with others, his co-tenants, to the extent of his interest and possession in common, as aforesaid,

and avers that he has always confessed and still freely confesses the right of his co-tenants, lawfully possessed of an estate in said premises, to enjoy the same in common with himself.

Thus the title and right of possession were distinctly put in issue. The cause was tried by the Court, without a jury, and the Court found and adjudged, that the plaintiffs were entitled to forty-one eighty-first parts of the premises, " and that they be let into possession of the said premises according to their said undivided interests as tenants in common with the said defendants, and that said defendants do have and recover judgment against the said plaintiffs for the undivided forty eighty-first parts of said land and premises, and for the possession thereof as co-tenants with said plaintiffs, and that plaintiffs pay the costs of suit."

The record also contains an agreed statement on motion for new trial, embracing the evidence, which shows that the parties, on the former trial, relied upon the same title, and same evidence to support it, as on the trial in this case. But on the former trial the will of Peralta, offered in evidence by plaintiffs, was excluded, while on the trial in this case, it was admitted. The plaintiffs in the first action appealed to the Supreme Court, the judgment was affirmed, and it is still in full force.

The former proceeding and judgment having been set up by way of estoppel, the question is, whether the record and judgment in the first action, were admissible in evidence on the trial of the second.

It is perfectly well settled, that the judgment of a Court of concurrent jurisdiction directly upon the point is, as a plea, a bar; and where there has been no opportunity to plead it, and it is offered in evidence, it is admissible and conclusive between the same parties and their privies upon the same matter directly in issue in another Court; and also when coming incidentally in question in another Court for another purpose. The entire current of authorities in England and America establish the rule as here limited, and many extend it further.

(1 Greenl. Ev.' Secs. 528–531; *Duchess of Kingston's Case*, 20 State Trials, 355; 11 Conn. 249; *Marsh* v. *Pier*, 4 Rawle, 289; 11 Mass. 446; Starkie's Ev. by Shars. 333; 19 N. H. 167; *Betts* v. *Starr*, 5 Conn. 550; 17 Mass. 365; 3 Cow. 127; 2 Smith's Lead. Cases, 572; 2 Hill, 481; 10 Wend. 85; 8 Wend. 40.)

And the rule is applicable to real, as well as personal actions. "Each species of judgment, from one in an action of trespass to one upon a writ of right, is equally conclusive upon its subject matter by way of bar to future litigation for the thing thereby decided." * * * 'What, therefore,' Lord Coke says, 'that in personal actions concerning debts, goods and effects (by way of distinction from other actions), a recovery in one action is a bar to another, is not true of personal actions alone, but is equally and universally true as to all actions whatsoever *quoad* their subject matter.'" (*Outram* v. *Morewood*, 3 East. 357.)

But neither the judgment of a concurrent or exclusive jurisdiction is evidence of any matter which only comes collaterally in question, though within the jurisdiction; nor of any matter incidentally cognizable; nor of any matter to be inferred by argument from the judgment. The matter to become as a plea, a bar, or as evidence conclusive, must have been directly in issue. (1 Green. Ev. 528; *Fulton* v. *Hanlow*, 20 Cal. 451; 15 Cal. 147; *Hopkins* v. *Lee*, 6 Wheat. 109; and cases before cited.)

It will be seen from the rule as here stated, that, the matter adjudicated to become, as a plea, a bar, or as evidence conclusive, must have been *directly* in issue, and *not merely collaterally litigated. It must be a fact "immediately found according to the pleadings, not that on which the verdict was merely based— a fact in issue, as distinct from a fact in controversy."* (*Porter* v. *Baker*, 19 N. H. 166; *McDonald* v. *B. R. W. and M. Co.*, 15 Cal. 148.) And what constitutes a fact *in issue*, as distinct from a fact *in controversy*, is well illustrated in the case of *King* v. *Chase*, 15 N. H. 15–17; *Betts* v. *Starr*, 5 Conn. 552.

The respondent's counsel does not controvert the correct-

ness of these principles, but relies on them. He says "It is not questioned on the part of the respondent, that a judgment pronounced on the merits in one action by a Court of competent jurisdiction, is conclusive upon the parties and privies in a subsequent action, as to the same subject matter. Nor does he contend that a judgment in ejectment forms an exception to the rule." * * * "The object of ejectment for land is the recovery of possession; the subject matter to be tried is the right of possession as between the plaintiff and defendant; that is the extent of the issue. On the trial of that issue various matters may arise collaterally, but the only fact directly put in issue, tried and determined in the action, touches the right of possession. As to the matters so put in issue, tried and determined, the judgment concludes the parties."

This proposition is partly, but not entirely true. The recovery of possession was, doubtless, in part at least, the object of a suit in the old action of ejectment—the fruit sought by the litigation—but the *right* of possession was not, strictly speaking, the *fact* litigated and determined. The subject matter in one sense may be the right of possession, but the right of possession is a conclusion of law to be *drawn from the facts* put in issue and determined, and *not the facts* themselves from which it is deduced. A complaint alleging in terms a right of possession merely, and a wrongful withholding, would present no issue of fact which a Court could try. The subject matter litigated and determined depends upon the facts alleged in the pleadings.

This proposition of the respondent's counsel proceeds upon the theory, that, the recovery alone, and not the matter in issue and determined, and upon which the recovery is had, constitutes the bar. Lord Ellenborough, in commenting upon a prior case, in *Outram* v. *Morewood*, 3 East. 354–5, said:

"The Court very properly distinguished then between what operates by way of bar to a *future recovery* of the same thing, and what by way of *estoppel.* That was the case of a mere recovery *in ejectio firmœ*, without title alleged; and the plain-

tiff might in respect of possession, or other varying circumstances of title, be well entitled to recover at one time, and not be so at another. And it is *not* the *recovery*, but the *matter alleged* by the party, and upon which the recovery proceeds, which creates the estoppel. The *recovery itself in an action of trespass is only a bar to the future recovery of damages for the same injury; but the estoppel precludes parties and privies from contending to the contrary of that point or matter of fact, which having been once distinctly put in issue by them, or by those to whom they are privy in estate or law, has been on such issue joined and solemnly found against them."*

This shows that it is not the object of the suit, the recovery, or fruits of the litigation alone that constitutes the estoppel, but the facts put in issue, and found, upon which the recovery is based. The controversy, then, is, as to what is directly in issue in an action to recover the possession of real estate under our system of pleading and practice.

From habit, and as a matter of convenience, we ordinarily speak of the action, in a general sense, as an action of ejectment. This is well enough, so long as we do not suffer ourselves to be misled by confounding the action to recover real estate in use in this State, with the action of ejectment at common law, and as a consequence embarrass ourselves by attempting to apply the rules of law peculiar to the latter action to the former. Technically, and substantially, we have no action of ejectment. The forms constitute the substance of that action at common law. True, practically, the possession of the land was recovered. But this was equally true of the writ of entry, and an assize. All these were possessory actions merely. And there would be just as much propriety in calling our action to recover the possession of land a writ of entry, or an assize, as an ejectment. The pleadings are more nearly assimilated to the pleadings in a writ of entry, or an assize, than to the pleadings in an action of ejectment. In theory, the writ of entry, and the assize, were actions to recover the freehold; while ejectment was an action to recover the term of the tenant—a mere chattel interest. But, in our

State, an action is rarely brought by a tenant, either in substance or form, to recover his term. Practically, the possession of the land, and nothing more, was recovered at common law in each of the actions named.

In regard to the two former actions Mr. Blackstone says: "These remedies are either by writ of entry, or an assize, which are actions merely possessory, serving only to regain that possession. whereof the demandant (that is, he who sues for the land) or his ancestors have been unjustly deprived by the tenant or possessor of the freehold, or those under whom he claims; they decide nothing with respect to the right of property; only restoring the demandant to that situation in which he was (or by law ought to have been) before the dispossession committed."      *      *      *

"The first of these remedies is by writ of entry, which is that which disproves the title of the tenant or possessor, by showing the unlawful means by which he entered or continues in possession."      *      *      *

The writ requires the tenant to deliver seizin, or show cause why he will not.  "This cause may be either a denial of the fact of having entered by or under such means as are suggested, or a justification of his entry by reason of title in himself or in those under whom he may claim; whereupon the possession of the land is awarded to him who produces the clearest right to possess it." (Sharswood's Black. Com. 180–1.)

After stating the exceptions, Blackstone says, "But in general the writ of entry is the universal remedy to recover possession, when wrongfully withheld from the owner." (Ib. 183.) Notwithstanding these actions are merely possessory and "*decide nothing* with respect to the *right of property*" (a question which could only be determined in a writ of right), a judgment in one writ of entry *was conclusive* in another, or *in an assize* for the same land.

Says Mr. Blackstone: "As a writ of entry is a real action which disproves the title of the tenant by showing the unlawful commencement of his possession, so an assize is a real action which proves the title of the demandant merely by

showing his or his ancestors' possession; and these two remedies are, in all other respects, so totally alike that a judgment or recovery in one is a bar against the other; so that when a man's possession is once established by either of these possessory actions, it can never be disturbed by the same antagonist in any other of them. (Ib. 184. See, also, *Adams* v. *Barnes*, 17 Mass. 365.)

"Actions of ejectment have succeeded to those real actions called possessory actions; but an inconvenience was found to result from them which did not follow from real actions, to which it has been found necessary to apply a remedy. Real actions could not be brought twice for the same thing; but a person might bring as many ejectments as he pleased, which rendered the rights of parties subject to endless litigation." (Archbold's note to Sharswood's Bl. Com. 206.)

The inconclusiveness of the judgment resulting from the form of proceeding was admitted to be an inconvenience, and the necessary remedy for it, referred to by Mr. Archbold, was, an injunction, which was at length granted, after two or more trials. (Ib.) In these real actions, then, we may say, with at least as much propriety as the respondent's counsel says of the action of ejectment, " the object is the recovery of possession; the subject matter to be tried is the right of possession as between plaintiff and defendant; that is the extent of the issue."

It is manifest, therefore, that the reason that one recovery in ejectment at common law was not a bar to a second ejectment between the same parties for the same land, was not because the subject matter to be tried was the right of present possession; for this reason would apply with equal force to the actions we have just considered, in which a former recovery was a bar. But the reason is found in the very framework and essential qualities of the action, which rendered the rules of law laid down at the commencement of this opinion inapplicable. The character of the proceeding is well known. Originally, the party who desired to recover the possession of land in this action entered upon the land, and there executed

a lease to some friend, and left him in actual possession, where he remained till some other friend, (called the casual ejector), or the prior tenant, came and turned him out. For this injury the tenant brought his action against the party who ousted him. If the party ousting him was a stranger, he was bound, under a rule of Court, to give notice to the tenant in possession that he had been sued and should make no defense, and that unless the tenant in possession should defend he would be turned out. This served as process to the tenant in possession, who then appeared and defended by permission of the Court, and became the real defendant in the suit. The plaintiff *did not allege title* in his declaration. He simply alleged that his lessor, on a day named, demised to him the premises in question, to hold for a specified term then next ensuing; that by virtue of said demise he entered into said premises and became and was thereof possessed for the said term; that being so possessed the defendant, at a time specified, and before the expiration of his term, with force and arms entered and ejected him. Subsequently a change was made by the Courts, after which the plaintiff and casual ejector were fictitious persons. The tenant in possession, as a condition of being allowed to appear and defend, was required to enter into what was called the consent rule, whereby he agreed to confess the lease, entry and ouster, and to plead not guilty. This obviated the necessity of proof on the points admitted, and left the parties at the trial at that stage of the proceedings in which they would have been after proving lease, entry and ouster. But the form of the declaration continued to be the same. Upon proof of the facts alleged, as the action originally stood, or upon their admission under the modified forms of proceeding, without proving any title in the landlord, if the defendant should introduce no testimony whatever, the plaintiff would probably be entitled to recover. He certainly would upon the face of the record, whatever the practice might have been under the almost unlimited control exercised over the action by the Judge who introduced it, and his successors. And he certainly would at this day in this State, on such a complaint, and proof

of the facts alleged, with no counter proof. But it would not be safe for the plaintiff to rest on such proof or admissions; for the defendant would undoubtedly introduce testimony to rebut his *prima facie* case; hence it was necessary for the plaintiff to show title in his lessor, notwithstanding none was *directly* alleged; and the title, though *not directly in issue*, thus became the real question and the only question *litigated*. But, as there was no averment of title, and no issue directly taken upon it, the title was only *collaterally* or *incidentally* litigated. It became "*a fact in controversy*," as distinct from "*a fact in issue*." Mr. Blackstone, after stating the mode of proceeding, says: "This is the regular method of bringing an action of ejectment, in which the title of the lessor comes *collaterally* and *incidentally* before the Court in order to show the injury done to the lessee by this ouster." (Shar. Bl. Com. 202); and again (Ib. 205), "Such is the modern way of *obliquely* bringing in question the title to lands and tenements, in order to try it in this *collateral* manner." But we have seen, that, the rule in all cases requires that the matter tried must be *directly*, and not *merely collaterally*, in issue, in order that the judgment shall be a bar. And in an action of ejectment at common law the title *is not directly in issue;* hence the judgment under the rule was not a bar, nor could the determination of the title be used as a matter of estoppel.

"In ejectment the unsuccessful party may retry the same question, (that is the title,) as often as he pleases without leave of the Court, for by making a fresh demise to another nominal character it becomes the action of a new plaintiff upon another right." (Christian's note to Bl. Com., Ib. 205.)

This is the reason given in the books. By a new demise a different term is created, a new possession and ouster alleged, and the matters directly alleged are different from those directly alleged in the former suit. The *recovery* alone, therefore, could not be a bar, as a *different term* was recovered. And the determination of the title was not available *as matter of estoppel*, because it *was not directly in issue*. And thus the title—the "*fact in controversy*," but not "*directly in issue*"—

might be again and again "collaterally, and incidentally" tried. The judgment is not conclusive upon the title till it has been "directly" put in issue, and determined. In an action for mesne profits, brought after a recovery in ejectment, the judgment in the ejectment suit was conclusive evidence of the plaintiff's right to recover from the date of the demise laid in the action of ejectment, for the reason that the right to the possession of the particular term for which the mesne profits were demanded was directly in issue and established in the ejectment. So in the action of trespass *quare clausum fregit*, the gist of the action is the injury done to the plaintiff's possession. But it frequently happens that the title is directly put in issue and determined, and, when "a verdict is found on any fact or title distinctly put in issue in an action of trespass, such verdict may be pleaded by way of estoppel in another action between the same parties, or their privies, in respect to the *same fact* or *title*. (*Outram* v. *Morewood*, 3 East. 346.)

In this case (page 354) Lord Ellenborough says " That a recovery in any one suit upon issue *joined on matter of title* is equally conclusive upon the *subject matter of such title ;* and that a finding upon title in trespass not only operates as a bar to a future recovery of damages for a trespass founded on the same injury, but *also operates by way of estoppel to any action for an injury to the same supposed right of possession.*" (Ib.)

In many States of our own country the common law action of ejectment has either been abolished, or the proceedings materially modified; and we shall now examine some of the decisions under such modified proceedings for the recovery of real property bearing upon the question under consideration.

In Connecticut, if the common law action of ejectment was ever in use, it was abandoned at a very early period, and a proceeding substituted, generally called an action of disseizin, sometimes ejectment; but whether the change was originally made by virtue of statutory provisions, or by the Courts we have not been able to discover with certainty—probably by rules of practice adopted by the Courts under statutory authority.

In the Revised Statutes of Connecticut of 1824, the only provision bearing on the subject under discussion which we have been able to find, is, that " the process in civil actions shall be by summons or attachment," and " shall be accompanied with a declaration, containing the cause of action," (Laws 1824, p. 34, Sec. 1) ; that " all suits wherein title to land is to be tried and determined   *   *   *   shall be brought and tried in the county where the land lies,"   *   *   *   * (Ib. Sec. 21) ; " that the parties shall make their pleas, and join issue according to the rules and orders established by the Court," (Ib. Sec. 29) ; that " the general issue of not guilty, owe nothing, did not assume and promise, *no wrong or disseizin*, or any other general plea proper to the action whereby the whole declaration is put in proof, according to the nature of the action may be made by the defendant, under which general plea the defendant shall be at liberty on the trial of the cause to give in evidence his title," etc., provided he shall not give in evidence under the general issue any matter required to be specially pleaded at common law without giving notice, etc. (Sec. 30.) Similar provisions as to the mode of commencing suits and the general issue are also found in the Revised Laws of 1796.

*Smith* v. *Sherwood*, which arose in 1822, (4 Conn. 280) was an action of disseizin or ejectment. The plaintiff alleged title and a disseizin. The defendant by way of estoppel plead a former judgment in a similar action, and averred that the title of the plaintiff in that action was the only subject of determination. Plaintiff demurred to the plea. The plaintiff in the first action alleged title and a disseizin. The defendants plead " no wrong and disseizin," and the jury found for defendants. The question was as to the sufficiency of the plea of estoppel. The Court were equally divided on the question, Hosmer, C. J., and Brainard, J., holding it to be insufficient, and Bristol and Peters, Justices, holding it sufficient. Hosmer, C. J., says : " Neither can the record be an estoppel to the plaintiff's demand, as the *ground of determination does not appear*. The defendants, it was found, did not disseize Salmon,

and the verdict may have been rendered upon the fact that *they had not been in possession of the premises,* or that *they had possessed by license from plaintiff,* or for other reasons which never involved the validity of his title.   It is impossible to say upon an inspection of the record only that the title of Salmon was ever drawn in question.   The estoppel, if there be one, must be founded on the averment of the defendant in his plea that the title of Salmon was the only subject of determination."   He then holds, that, to constitute an estoppel, not only must the precise point which is to create the estoppel have been put in issue and decided, but also, that this *must appear from the record alone*—that the record cannot be helped out by averment and parol proof.   It will be seen here, that the distinguished Judge put his decision upon the ground that, although title was alleged, the general issue, "no wrong and disseizin," did not necessarily put it in issue, for a failure to prove the defendants to have been in possession, would entitle them to a verdict on that plea, and the record would not show but that this was the ground of the verdict.   But he does not deny that the estoppel would have been good, if issue had been distinctly taken on the title.   The implication from what is said here, and by the same learned Judge in 6 Conn. 164, and 5 Conn. 132, in respect to the general issue, is that it would.   On the other hand, Bristol, J.. stoutly maintains, that the plea is good notwithstanding the trial of the first case was had upon the issue of "no wrong and disseizin."

He says, (p. 284) : " The action of disseizin (called indiscriminately disseizin or ejectment) is the only real action known to our laws.   Whether the plaintiff declares upon a seizin in fee, or any lesser estate, it is the only remedy for settling the title to real property.   This is probably the first time that a doubt has been intimated as to the nature of the action, and of its being *adapted to the great business of terminating disputes concerning the title to land.*"

After discussing the question at length, and citing and commenting on the case of *Outram* v. *Morewood,* he proceeds (p. 286) : " Let it be tested by the undoubted principles of that

case.   The plaintiff, Salmon, in the record alleged that he was seized in fee of the land in question, and that Sherwood disseized him.   The defendant pleaded the general issue.   Now was not the title directly in issue between the parties, being affirmed by the plaintiff and this affirmation denied by the defendant?   Suppose judgment had been rendered for the plaintiff, to recover the land, upon a verdict that he had done wrong and disseizin; could the defendant, just turned out of possession by execution, without any new title, bring another action of ejectment against the former plaintiff, and try the title?   Should the last jury differ from the first, and decide that he had title, he would again go into possession; and the parties, after two lawsuits, arrive at the point from which they started, and with the consolation that the same game might be continued without end.   Most certainly the defendant in an action of disseizin must be permitted to bring a new action and try the title again, notwithstanding a prior recovery of ejectment against him, provided the plaintiff, in case a judgment is rendered against him, can be permitted to bring a new action for the same land; for the judgment must bind both or it can bind neither.   It is obvious, then, that had Salmon recovered in the former suit the judgment would have concluded the defendant's title, as that title was directly put in issue and found against him; and it would seem a dictate of justice as well as law that the judgment being in favor of the defendant should be equally conclusive in his favor."

Again, upon the question whether the entire matter of estoppel must appear by the record, he said (p. 287):

"The defendant has averred, that on trial of the case of Salmon the ouster was proved and admitted by the defendant, and consequently the judgment and verdict proceeded on the ground that Salmon had no title.   The only question, therefore, is, whether such averments are admissible.   These averments are consistent with the record.   They do not contradict it.   The title was undoubtedly in issue by the declaration and plea, and the only effect of the averment is to show, what is consistent with the record, that the verdict was found in favor

of the defendants because Salmon had no title.   To permit such averments seems indispensable to attain the purpose of justice; and they have frequently been admitted in similar cases.   (*Hutchins* v. *Camp*, 2 Black. 827; *Sedden* v. *Tutop*, 6 Term Rep. 607; *Rover* v. *Foune*, 4 T. R. 146.)   Numerous cases in our sister States recognize the necessity and propriety of showing by averments anything not contradictory to the record when the question is whether a former judgment bars a subsequent suit."

And such seems to be the current of authorities on this point.   (*Gardner* v. *Buckbee*, 3 Cow. 127; *Young* v. *Black*, 7 Cranch. 565; *Burt* v. *Steinburgh*, 4 Cow. 559; *Lawrence* v. *Hunt*, 10 Wend. 85; *Young* v. *Rummell*, 2 Hill, 478; 4 Barb. 36, 457; *Doty* v. *Brown*, 4 Coms. 71; 2 Smith's Lead. Cases, 575.)   But they are not entirely uniform, and subsequent decisions seem to settle the point the other way in Connecticut.

It will be seen that the question in this case was, as to whether the title was shown by the record to be in issue and determined on the plea of " no wrong and disseizin;" and if not, whether the record could be aided by averment, and not as to the effect of the judgment, if in issue.   *If the title was shown by the record to be determined, or the record could be aided by averment, it seems to be taken for granted by all the Judges that the judgment would have been conclusive.*

Mr. Chief Justice Swift, in his Digest of the Laws of Connecticut, says, in relation to this subject : " In several States in the Union, they have copied in substance the English forms of real actions, with such variations as local circumstances required.   In Connecticut, we have introduced one action which comprehends and answers the purposes of the whole. This is indiscriminately called an action of ejectment or an action of disseizin.   Like the writ of right, *it definitely settles the title and is a bar to another action.*"   Here the sentence ended in the former edition.   But Professor Dutton, in the revision of 1851, made since the case of *Smith* v. *Sherwood* arose, adds this qualification : " [Provided issue is taken on

64

such title. But if on the general issue, no wrong or disseizin is pleaded, the judgment, whether for plaintiff or defendant, will not be an estoppel. The defendant in this action may plead an estoppel specially.]" Mr. Chief Justice Swift proceeds : " Like the writs of entry and assize, it will lie for possessory rights. Without the formalities and delays of real actions, or the fictions of the writ of ejectment, it comes directly to the object in the simplest form and with all the ease and expedition of a personal action." (1 Revision Swift's Dig. 507 ; see also p. 666.)

So also in Connecticut, the party in whose favor the title to land is determined, by an award of arbitrators, may avail himself of it, in a subsequent action by way of estoppel. (*Shelton* v. *Alcox*, 11 Conn. 248.)

Thus, in Connecticut, if issue be taken distinctly on the title, the verdict and judgment are conclusive upon the same principles that judgments in other actions conclude the parties.

In South Carolina, the action of ejectment, with some statutory modifications, was formerly in use. In 1791, the action of ejectment was abolished, and the action of trespass to try title substituted. The effect of the judgment upon the rights of *the defendant* in this action was left to be determined by the principles of the common law. And it was held in *Thomas* v. *Geiger*, 2 Nott and McCord, 528, that, " the defendant, in an action of trespass to try title, cannot, after a recovery against him, in turn become plaintiff and sustain a second action to try title." The Court say, (p. 530) : " It has been contended that a change of action does not alter the rights of the parties, and, therefore, in an action of trespass to try title, the parties retain the power of renewing the action as often as was permitted in an action of ejectment. The rights of the parties must not be confounded with the incidents peculiar to forms of action. The fictitious action of ejectment was substituted for the real action. As trespass to try title is now substituted for ejectment, were the rule contended for to prevail, trespass to try title as well as ejectment, must be governed by the incidents peculiar to a real action. This doc-

trine would leave no other difference between a real action, ejectment, and trespass to try title, than a name. The Legislature, however, contemplated a greater change. They were dissatisfied with the fictitious proceedings in ejectment, and their consequences, and therefore substituted the action of trespass."

Prior to 1847, the action of ejectment was in use in Georgia. In that year an Act was passed which provides : " That from and after the passage of this Act, the form of a declaration for the recovery of real estate and mesne profits may be as follows, etc., etc., to wit :

" (Title of cause.)   The petition of A. B. showeth that C. D. is in possession of a certain tract of land in said county, (here describe the land), to which your petitioner claims title ; that C. D. has received the profits of said land since, etc., and refuses to deliver said land to your petitioner, or to pay him the profits thereof.   Wherefore, your petitioner prays process, etc.   (Cobb's New Dig. Laws of Geo. 1851, p. 490.)"

There is no provision as to the effect of the judgment. In 7 Geo. 172, it was held that a plaintiff, if he chose, might, notwithstanding this provision, still proceed under the old forms of the action of ejectment.   But in *Sims* v. *Smith*, 19 Geo. 124, a verdict and judgment in an action brought under the Act of 1847, just cited, was held to be conclusive, even when set up in a subsequent action of ejectment brought in the common law form for the same land.   In this case the second action was brought under the old form.   The former recovery, under the form prescribed in the Act of 1847, was pleaded in bar.   No new title or right of possession since the verdict in the former action was shown.   Mr. Justice Starnes, who delivered the opinion of the Court, says, (p. 125) :

" The rule of practice, as derived from the English Courts, was, that a recovery in ejectment did not bar a subsequent action.   The rule was founded, I suppose, upon the nature and character of the action."   After stating the character of

the action he proceeds: " All this ingenuity and contrivance had their origin, no doubt, in the high estimate which was placed upon real estate in England, and its immense importance as an element in the feudal policy. But whatever may have been the reason of the rule, such it was—and we have made it a part of our law.

" We are all ready to admit, however, I suppose, that there is no necessity for the rule with us; that there is no reason in our State, why a suitor claiming real estate in a Court of justice should have this advantage over one who was suing for personal property ; that substantial and practical reasons cannot be assigned for it. Still, if called upon to enforce it in such a case, and under such circumstances as would demand its enforcement at the common law, we should feel constrained to adopt it. But when a different case is presented, arising in part out of our own legislation, we are at liberty to adopt a more reasonable and practicable rule. The case is presented here. The first action, brought according to the provisions of our statute of 1847, was a real substantial claim of title, and it was determined against the plaintiff.

" Now, we regard the Act of 1847 as intended to try title, not possession. The plaintiff confessedly cannot directly bring another action against the defendant under and by virtue of the provisions of the statute, for the purpose of trying the title to the same premises. Shall he be allowed to do so circuitously, by adopting the common law fiction ? This unreasonable result is avoided by holding that the common law rule, which we have been considering, can properly be held applicable to a case of ejectment only when the common law forms have been adopted and followed by the plaintiff—that the Act of 1847 repeals the common law fiction as to all cases where it is followed ; and when a verdict is rendered under it, the common law fiction must give way and can no longer apply, if another case be brought by the plaintiff against the defendant, in the form of common law ejectment, if it can be shown that the latter case is in truth and in fact an action for the trial of the same title."

Thus we see, upon a careful examination of the subject, that the forms and fictions of the action of ejectment are of the very essence and substance of the action, and that wherever its forms are swept away, its peculiar incidents and consequences go with them.

In several of the States, as in New York and Illinois, there are special statutes regulating actions for the recovery of real estate. In such cases, the forms of the common law action of ejectment are generally abolished, and another form substituted, and—what would naturally be expected, as a consequence of the change of the form in the action—the effect of the judgment is also modified, regulated and prescribed. Sometimes one new trial in the same action is granted, as a matter of right, and another upon a proper showing, in the discretion of the Judge. But when *finally determined in that action*, it is made *conclusive*. The statutory form of a declaration in New York does not even allege title. It only alleges a possession by plaintiff and an ouster by defendant. Yet the judgment is made conclusive. A second trial, if any be had, *must be in the same action.*

But these provisions granting new trials, as a matter of absolute right, were adopted many years ago, when the old ideas as to the peculiar importance and sacredness of real estate, in comparison with personalty, still lingered in the minds of the people. At this day, and especially in the new States, little more importance is attached to real estate, than to personal property of equal value. It is almost as much an article of traffic, commerce and speculation as merchandise. No restraints are thrown around its alienation, except so far as are necessary for the protection of parties dealing in it, by enabling them to trace and preserve the evidence of titles, and judge of their validity. Since the change in the form of actions, no technical reason exists—and we can perceive no substantial reason inherent in the nature of the property—why the title to a piece of land should not be finally determined by one trial fairly conducted, in which no error occurs, that does not apply with at least equal force to an action for the recovery of a

horse, a ship or any other piece of personal property of equal value; and a judgment upon title to a ship or other personal property is conclusive. (*Dennison* v. *Hyde*, 6 Conn. 516.) In fact, if there is any difference, the reason is stronger for a second trial in the case of personalty than of realty; because, from the fixed character of real estate, the muniments of title can be more easily preserved and traced. The evidence of title may be, and generally is, of record, open to the examination of all—always at hand and easily produced whenever occasion requires; while the evidence of title to personalty generally, to a great extent, rests in parol—is more evanescent in character—more liable to be lost, or, if in existence, more liable to be beyond the reach of the party at the particular time when he has occasion to produce it. Hence, a party is much less likely to be able to present the full strength of his case at the time when forced into trial of the right to personal property, than upon a similar trial as to realty. Neither is there anything in the particular estate which a party may have in the property, or the character of the right sought to be enforced, that distinguishes one kind of property from the other.

One party may have the absolute right of property; a second, the right of enjoyment for a specified time; a third, a right of immediate possession; and a fourth, the actual, rightful or wrongful possession of personalty, as well as of realty; and there may be injuries to the rights of each of these parties, for which they have a remedy. A party may recover possession who has no right of property, as well as in the case of realty; and we can see no reason why a judgment upon a matter in regard to realty, once put in issue, litigated and determined—whether it be title, a right of present possession, or something else—should not be conclusive, as well as when it relates to personalty. No principle of the common law would be violated by such a result. On the contrary, its rules require it. Nor would it be contrary to any principle of public policy.

Mr. Greenleaf says: " The rules of law upon this subject are founded upon these evident principles, or axioms, that it

is for the interest of the community that a limit should be prescribed to litigation; and that the same cause of action ought not to be brought twice to a final determination. Justice requires that every cause be once fairly and impartially tried; but the public tranquillity demands that, having been once so tried, all litigation of that question between those parties should be forever closed." (2 Greenl. Ev., Sec. 522.)

If there is any litigation that the "interest of the community," and "the public tranquillity demand," "should be forever closed," after one full and fair trial—or even without trial unless it be speedily had—it is, in our judgment, litigation in respect to titles to lands. And such was manifestly the opinion of the Legislature of this State; for in adopting a Statute of Limitations that should bar all actions in relation to realty, they fixed upon the unprecedentedly short period of five years. And in prescribing the mode of proceedings in civil cases, that body left the action for the recovery of real estate untrammelled by any of the forms and fictions that pertained to actions of ejectment, and to the almost innumerable variety of other proceedings relating to real and mixed actions at common law. They made no distinction between personal and real actions, but left them all to be governed by the same principles, and attended by the same incidents and consequences. Whether the action be real or personal, the plaintiff alleges the facts that constitute his cause of action. There is no general issue. The defendant must take issue directly upon each material allegation by denying it, or it will be taken against him as admitted. Whatever is put in issue and passed upon, is, upon the principles of the common law, finally determined. In the language of Mr. Chief Justice Swift, in speaking of the action of disseizin in Connecticut, as distinguished from the numerous real actions at common law, before quoted, we have but "one action which comprehends and answers the purpose of the whole. Like the writ of right it definitely settles the title, and is a bar to another action, provided issue is taken on such title. Like the writs of entry and assize it will lie for possessory rights. Without the formalities and delays of real actions,

or the fictions of the writ of ejectment, it comes directly to its object in the simplest form, and with all the ease and expedition of a personal action."

It does not follow, that a party suing to recover the possession of land must use the same stereotyped form of complaint, or that he must allege title in fee, because he may do it. He need not of necessity adopt the precise form of complaint, which was in controversy and approved in *Payne and Dewey v. Treadwell*, 16 Cal. 243. The form may be adapted to the estate sought to be recovered, and the facts desired to be put in issue. The cause of action should be stated *according to the facts*. In the language of Mr. Chief Justice Field, in that case (p. 245,) the plaintiff may aver, " that he is seized of the premises, or of some estate therein in fee, for life, or for years, *according to the fact ;*" or " When the plaintiff has been in possession of the premises for which he sues, it will be sufficient for him to allege in his complaint such possession and entry, ouster and continued withholding by the defendant. Such allegations are proper when they correspond with the facts, but they are not essential." (Ib. p. 244.) *But whatever is put in issue, and determined, is conclusive and final.*

If a party declares upon a seizin in fee, and thus puts his title in issue, and chooses to rely upon a prior possession merely, or does not choose to put in all his evidence of title, or is unable from any accident to get it in, he is in no worse position than many other parties, who for any reason fail in personal actions to get in sufficient, or all their evidence. Prudent counsel, where, from any unforeseen accident they fail to make as strong a case as the facts and evidence attainable should enable them to do, and they are not satisfied of the sufficiency of their proofs, will submit to a nonsuit, or in a proper case, with the permission of the Court, withdraw a juror and begin again. If they do not, they cannot complain that the judgment against them in the action should be followed by its legitimate consequences.

In order that we may not be misapprehended, we will add,

that the estoppel of a verdict and judgment is necessarily limited to the rights of the parties as they exist at the time when such verdict and judgment are rendered, and cannot preclude either party from showing that their rights have been varied or extinguished at a subsequent period. No injury, therefore, can result on that ground.

In this case the record offered in evidence, and excluded by the Court, shows, that in the former suit, the title was distinctly put in issue and determined, (the possession of an undivided half was admitted by the answer) ; that the undivided forty-one eighty-first parts was found and adjudged to be in the plaintiffs—and forty eighty-first parts in the defendant; that the same title, and the same ouster, were relied on in this action—for the plaintiffs proved that the defendant's possession extended as far back as 1857 before the commencement of the former .action, and no evidence of title acquired since the former suit was offered. The Court therefore erred in refusing to admit the record in evidence, and the judgment must be reversed.

Another question of great importance has been presented in this case and elaborately argued, which the counsel urge us to decide. But under the views we have taken, it becomes unnecessary to determine the question in this case, and the importance of the questions already discussed have required so wide a range of investigation, that we have already devoted as much time to the consideration of the case as the accumulated business, and other pressing duties of the Court will admit of at this time.

This cause was decided by the late Supreme Court, Mr. Justice Crocker delivering the opinion, in which all the Justices concurred. At the time of the transfer of the cause to the new Court there was a petition for rehearing pending. As the questions involved were new in this State, and supposed to be of great practical importance, a rehearing was granted in order that they might be further considered. Upon a thorough examination of the case we have arrived

at the same conclusions as those attained by our predecessors, and upon substantially the same grounds.

Let the judgment be reversed and the cause remanded for further proceedings.

RHODES, J.: I concur in the judgment.

CURREY, J.: I dissent.

[NOTE.—Since the foregoing decision was announced, we have been favored by Mr. Justice Field with a copy of the opinion of the Supreme Court of the United States in the case of *Miles* v. *Caldwell*, recently decided. The Court had occasion to discuss, to some extent, the questions involved in *Caperton* v. *Schmidt*, and we are gratified to find that the views so ably expressed in the opinion of Mr. Justice Miller coincide with those announced by us in this case.]