## THE NEVADA COUNTY AND SACRAMENTO CANAL COMPANY *v.* GEORGE W. KIDD *et als.*

IRRELEVANT MATTER IN A COMPLAINT.—Matter contained in an amended complaint is not irrelevant or redundant to a cause of action set out in the original complaint in the same action.

AMENDED COMPLAINT.—Unless new matter inserted in an amended complaint is entirely foreign to the cause of action in the original complaint, the question will not arise on motion to strike out, whether the amendments in the amended complaint go further than is allowed by our code of procedure touching amendments.

ORIGINAL AND AMENDED COMPLAINTS.—For the purpose of determining whether new matter contained in an amended complaint is entirely foreign to the cause of action contained in the original complaint, the original complaint must receive a liberal construction.

AMENDMENTS TO COMPLAINT FOR WATER RIGHTS.—If the complaint avers the ownership of land in the bed of and near the banks of a stream, and work done thereon to dig a canal and build a dam to use the waters of the stream, and is framed for a judgment to recover possession of the property from one who is averred to have ousted plaintiff, if the plaintiff asks it, he should be allowed to amend his complaint by inserting therein averments of his prior appropriation of the water and a diversion by defendant, with prayer for an injunction.

ALLOWANCE OF AMENDMENTS TO A COMPLAINT.—An amendment should be allowed to a complaint at the request of the plaintiff, so as to make it express the cause of action originally intended but ambiguously expressed, if the intention is manifest on the face of the complaint.

*Per* SANDERSON, C. J., CURREY, J., *concurring:*

CONSTRUCTION OF A PLEADING.—The common law rule that a pleading must be taken most strongly against the pleader where the language used is ambiguous, has no application where the pleader confesses that his pleading is ambiguous and asks to amend it.

APPEAL from the District Court, Fourteenth Judicial District, Nevada County.

The following was the original complaint in this action:

"The plaintiff, a body corporate under the laws of the State of California, created on or about the 28th day of June, A. D. 1851, under the name and style of 'The South Yuba Mining and Sacramento Canal Company,' but now exercising its functions and using the corporate name of the 'Nevada County and Sacramento Canal Company,' by virtue of a special Act of the Legislature of the said State of California, which was duly signed, and on the same day approved by his excellency the Governor of said State, to wit: on the 20th day of January, A. D. 1855, whereby the same became a law, said plaintiff in its capacity of a corpoarte body, and by its name, complaining, charges and avers that on and before, and for a long time prior to the 14th, the 15th, and 16th days of February, A. D. 1855, the plaintiff was the owner in fee, as he is informed and believes, and had been in the peaceable and quiet possession of the following described sections, lots, picces, or parcels of land, enjoying the rents and profits thereof, to wit: the first commencing on the South Yuba River, four hundred and twenty rods above the summit of the gap which divides the south branch of the said Yuba from the waters of Bear River, and which summit is a part of a small valley reaching within eighty rods of the said Yuba River, and better known by the name of "Bear Valley Gap." Said point of commencement is designated by being a short distance above some falls or rapids in said river, and where a pine or fir tree had fallen, and on or about the said 14th, 15th, and 16th days of February, A. D. 1855, did lie quite across the stream of the said South Yuba River, above the water thereof; thence down the east side of said river with its meanders three hundred and forty rods; and thence eighty rods or thereabouts into said valley to a cabin or small house erected by plaintiff; said section, lot, piece, or parcel of land having a width of six hundred and sixty feet, more or less, for its whole length, with the

bank of the river and the mountains on the north and north-east, and on the south and southeast, Bear Valley; said premises being situated in part in said Bear Valley Gap, and a gorge running down from the mountains on the right hand side of said river, as the same is ascended from said gap, as he is informed and verily believes.

"The other section, lot, piece, or parcel of land, adjoins the first above described premises, commencing at said cabin or small house, having the same length and width, to wit: a length of four hundred and twenty rods, by a width of six hundred and sixty feet, more or less, and extending southwest into the said Bear Valley, and being a part thereof, as he is informed and verily believes.

"That by virtue of its ownership of said sections, lots, pieces or parcels of land, said plaintiff entered on said land with all and singular the appurtenances appertaining thereto, and was possessed thereof; and the said plaintiff being so possessed of said land and premises, caused levels to be taken, and a survey to be made for a flume, canal or ditch, and caused notices to be posted to the effect that plaintiff claimed all the waters of the South Yuba River for mining and other purposes, and thereupon plaintiff erected a cabin or small house, and commenced to work upon said flume, canal or ditch, and for a long time, to wit: from on or about the month of June, A. D. 1851, until on or about the 16th day of February, A. D. 1855, did work thereon by its representatives, agents, and servants, and did enjoy the profits and revenues thereof, as he is informed and verily believes. And·that the point above described, where said pine or fir tree had fallen and lay across said stream, was located, held, enjoyed, and possessed by the plaintiff, as a location for a dam to turn the waters of the said South Yuba River into its flume, canal or ditch, and that upon said location and premises said plaintiff had expended large sums of money; that the defendants in the above entitled cause afterwards, to wit: on or about the sixteenth day of February, A. D. 1855, with force and arms, entered into and upon the above described two sections, lots,

pieces or parcels of land, with the appurtenances belonging thereto, in the possession of said plaintiff, and the said defendants ejected said plaintiff out of the possession of the said two sections, lots, pieces or parcels of land, and out of all and singular the appurtenances thereunto belonging. And that said defendants did, on or about the 16th day of February, A. D. 1855, wrongfully and unlawfully, with force and arms, drive off the agents and servants of said plaintiff, who were then, in behalf of plaintiff, employed in the construction of the said dam which plaintiff was then building at the aforesaid point, for the purpose of diverting the waters of the stream of the said Yuba River, and that said defendants have, since said 16th day of February, constructed a flume, which runs from the point above described where said pine or fir tree lay across the said Yuba River, through the two sections of land above described belonging as aforesaid to plaintiff, southwest towards the summit dividing the waters of Bear River and Steep Hollow Creek, on the line surveyed through said lands of plaintiff, and upon which plaintiff has had his agents and servants employed in constructing its said flume, canal or ditch, and that said defendants unlawfully detain from plaintiff all said lots of land, and the appurtenances thereunto belonging, together with all the improvements made by said plaintiff as aforesaid, together with its line of survey, and have wrongfully and unlawfully, with force and arms, obstructed and prevented the erection of the works designed by plaintiff, thereby causing to plaintiff great damages and loss, to wit: damages in the sum of one hundred thousand dollars, and that said amount has accrued on account of said wrongful acts since the 6th day of March, A. D. 1855.

" Wherefore plaintiff brings this suit, and prays for a judgment for a restitution of all the above described premises, and one hundred thousand dollars damages, together with costs and money expended, and disbursements, and for general relief."

The Court, on defendants' motion, struck out of the amended complaint, as irrelevant and redundant, the following:

"That said land and said point on said river was owned, possessed, and occupied by plaintiff, for the purpose of constructing a canal through and upon the same, to divert and carry the water of said river flowing down to said point into the mining region below said Bear Valley, to be used for mining and other purposes, and that plaintiff did locate and survey a line of ditch or canal for the purpose aforesaid, upon and through the land aforesaid, from the point aforesaid on said river, and located and occupied said point for the purpose of constructing a dam thereat and thereon, to divert all the water of said river at said point into the canal located by plaintiff as aforesaid. That having made said location of said claim and said canal, and having taken and acquired actual and peaceable possession of the premises aforesaid, plaintiff commenced the actual construction of a dam at the point aforesaid, for the purpose aforesaid, and the construction of a canal for the purpose aforesaid, on the line and upon the premises aforesaid, whereby plaintiff alleges that by reason of the matter hereinbefore stated it became entitled to the exclusive use and possession of the water flowing down said river at the point aforesaid, and the right to divert the same from its natural bed."
\*   \*   \*   " and soon thereafter commenced the construction of a canal upon the line located by plaintiff as aforesaid, and through the land aforesaid, and the construction of a dam at the point aforesaid, for the purpose of diverting the water of said Yuba River into such canal, and continued such construction until they completed said dam and canal, the same being the canal known and called the South Yuba Canal, and diverted the water of said river at the point aforesaid by means of said dam and canal through said canal."

The amended complaint contained a prayer for an injunction. Defendant recovered judgment, and plaintiff appealed and assigned as error the order of the Court striking out portions of the complaint. The complaint as left, after the Court had made the order striking out, stated a cause of action for recovery of possession of the land.

The other facts are stated in the opinion of the Court.

*E. Casserly*, and *W. H. L. Barnes*, for Appellant.

The complaint, though inartificially, or even imperfectly drawn, indicates distinctly enough the scope and purpose of the suit. The action is for a series of trespasses upon the plaintiff's lands and property, but mainly upon its water rights in and connected with the same, and especially its rights to appropriate and divert all the waters of the South Yuba River, for mining and other purposes, by and through a dam connecting with a ditch or flume in course of construction at and from a point on the river, and passing through and over the plaintiff's lands.

In this State the liberal exercise of the right of amendment of pleadings is deemed to be highly conducive to the full and prompt administration of justice, and is broadly sustained by this Court. A few cases will be cited : first, for the general doctrine, and next for the particular applications of it :

General doctrine :—*McMillan* v. *Dana*, 18 Cal. 349, subd. 4 ; *Roland* v. *Kreyenhagen*, 18 Cal. 457 ; *Pierson* v. *McCahill*, 22 Cal. 130, 131 ; *Lestrade* v. *Barth*, 17 Cal. 289 ; *Gillen* v. *Hutchinson*, 16 Cal. 156, sub. fin.; *Smith* v. *Yreka County*, 14 Cal. 201, 202 ; *Connolly* v. *Peck*, 3 Cal. 82 ; *Gallagher* v. *Delany*, 10 Cal. 410 ; and see 12 Cal. 449.

Particular applications:—*McDonald* v. *Bear River Company*, 15 Cal. 145, 149—complaint held by this Court fatally defective as " looking to equitable relief only, and not sufficient to authorize a determination of the legal rights of the parties," (p. 148,) allowed in this Court, upon remanding the cause, to be amended so as to obviate the defect. *Connolly* v. *Peck*, 3 Cal. 75–82—to the same effect. *Robinson* v. *Smith*, 14 Cal. 254—joint plea of Statute of Limitations amended on the trial, after it was held bad, by the filing of a separate plea. *Tryon* v. *Sutton*, 13 Cal. 490, 493, 494—complaint on assignment of a mortgage by a married woman without her husband's concurrence ; held fatally defective, but allowed to be amended.

*George Cadwalader*, for Respondents.

It was a pure and simple complaint in ejectment, averring title and possession in plaintiff, an ouster and detention by defendants, and claiming judgment for restitution. Instead of a simple allegation of ouster by defendants, the complaint averred at length the manner of the ouster, or the intention of the defendants in seizing the land, etc. These comments were unnecessary and improper, (*Garrison* v. *Sampson*, 15 Cal. 95; *Boles* v. *Weifenback*, 15 Cal. 144; *Payne & Dewey* v. *Treadwell*, 16 Cal. 243,) and could have been stricken out on motion, (*Coryell* v. *Cain*, 16 Cal. 571;) but they do not alter the nature of the action, which was simple ejectment to recover possession of certain parcels of land.

The amendments raise the question of the right to the use of the waters of the Yuba, and claim damages for their diversion by defendants. Now, the defendants could admit every material allegation of the original complaint, and it would not follow that plaintiff is entitled to use a drop of the Yuba water. The plaintiff may have owned the strip of land, as claimed, and the defendants, by prior appropriation, or subsequent appropriation and adverse use, may have acquired a right to the water. The numerous cases cited by appellant's counsel in their brief merely show that where there has been no gross abuse of discretion by an inferior Court in the matter of an amendment, the appellate Court will not interfere.

By the Court, SANDERSON, C. J.

The motion to strike out certain portions of the amended complaint was made upon two grounds: first, because the same were irrelevant and redundant; and second, because they contained a cause or causes of action not embraced in the original complaint.

So far as the first ground is concerned, our examination must be confined to the amended complaint, for it cannot be said that any matter contained in one pleading is irrelevant or redundant to a cause of action set out in another and differ-

ent pleading. It is obvious on inspection that the matter stricken from the amended complaint was not irrelevant or redundant to the cause of action therein set forth, and we do not understand counsel for the respondents as claiming that it was. We may therefore dismiss that branch of the motion without further comment.

It is unnecessary to discuss the questions (so elaborately argued by counsel) which would be presented were we to assume, as alleged in the second ground upon which the motion was made, that the amended complaint contains a cause or causes of action not alleged, or more properly speaking, attempted to be alleged in the original, for the reason that, after a careful examination and comparison of both, we have come to the conclusion that such is not the fact.

The matter stricken out of the amended complaint, mainly relates to the alleged right of the plaintiff to the use of the waters of the South Yuba River, and the alleged interference by the defendants with the enjoyment of that right, to the damage and prejudice of the plaintiff. Is this matter entirely foreign to the original complaint? If it is, the question as to whether the amended complaint goes further than is allowed by our code of procedure touching amendments arises, otherwise not.

For the purpose of determining this question, the allegations of the original complaint must receive a liberal construction, with a view to substantial justice between the parties, (Prac. Act, Sec. 70 ;) and we may add, that they must be read in the light of the law governing water rights in the mineral regions of this State, as it stood at the time the complaint was drawn, which was as far back as October, 1855. At that time this branch of our local law had not altogether cast off its milk and swaddling clothes. The rules governing the acquisition and tenures of water rights by miners and ditch or canal companies had not been so clearly defined as they have been since that time. The profession had not fully learned to regard those rights as something separate and apart from an ownership of the soil, but to some extent, at least, continued to regard

them as in some measure dependent upon a right or title to the land. There was also some doubt and conflict of opinion as to what was the proper remedy in case of an ouster or interference with the possession and enjoyment of such rights—whether it was necessary for the plaintiff to sue for the possession of the land, or content himself with alleging a prior appropriation of the water merely. The original complaint in this case, as will appear hereafter, was drawn upon the former theory. When, therefore, we read it for the purpose of ascertaining what is the substantial cause of action therein set forth, or attempted to be set forth, we must not overlook the condition of the law as above described.

The complaint commences by averring that the plaintiff is a corporation, and, although it is not expressly averred, yet it is apparent from the name and style of the corporation and other matters set out in the complaint, that the corporation was formed for the purpose of carrying on the canal or ditch business, as known and understood in the mineral regions of the State. Being a corporation, the plaintiff had no capacity to take or hold land beyond the necessities of its business. The very object and purpose of its formation was the acquisition and use of water rights and privileges as a principal thing, and not the acquisition and use of land except as something incidental to the main purpose. It is true that this fact, by itself considered, is not entitled to much weight, but when considered in connection with other facts and circumstances which appear, as we shall presently see, in the body of the complaint, it is worthy of notice in determining what was the substantial cause of action upon which the plaintiff relied, and which it intended to allege.

The complaint thereafter substantially takes on the form of a complaint for the recovery of real property and avers that the plaintiff is the owner in fee of certain lands, describing them in part as bounded by the South Yuba River; but it is apparent from what follows the description of the lands that a recovery of the possession of the lands was not the sole and

only purpose of the action. On the contrary, the plaintiff seems to have alleged its ownership of the land more by way of inducement than as a principal thing, or as a supposed necessary foundation for the water rights or privileges subsequently asserted and claimed; for immediately upon the heel of the description of the lands, the complaint proceeds in these words: "*That by virtue of its ownership of said sections, lots, pieces or parcels of land,* said plaintiff entered on said land with all and singular the appurtenances pertaining thereto, and was possessed thereof; and the said plaintiff, being so possessed of said land and premises, *caused levels to be taken and a survey to be made for a flume, canal or ditch, and caused notices to be posted to the effect that plaintiff claimed all the waters of the South Yuba River for mining and other purposes,* and thereupon the plaintiff erected a cabin or small house and commenced to work upon said flume, canal or ditch, and for a long time, to wit: from on or about the month of June, 1851, until on or about the 16th day of February, 1855, did work thereon by its representatives, agents and servants, and did enjoy the profits and revenues thereof, as it is informed and verily believes. And that the point above described, where said pine or fir tree had fallen and lay across said stream, was located, held, enjoyed and possessed by the plaintiff as a *location for a dam to turn the waters of the said South Yuba River into its flume, canal or ditch,* and that upon said location and premises said plaintiff had expended large sums of money; that the defendants in the above entitled cause afterwards, to wit: on or about the 16th day of February, 1855, with force and arms, entered into and upon the above described two sections, lots, pieces or parcels of land, with the appurtenances belonging thereto, in the possession of said plaintiff, and the said defendants ejected said plaintiff out of the possession of the said two sections, lots, pieces or parcels of land, and out of all and singular the *appurtenances* thereunto belonging." By the word "appurtenances" the pleader manifestly refers to the plaintiff's alleged water rights.

Thereafter it is averred in substance that defendants entered

and drove off the plaintiff's agents at work upon the dam and canal, and took forcible possession of the plaintiff's dam and survey, and constructed for themselves a dam and flume and forcibly prevented the plaintiff from proceeding with the erection of the works designed by it, to its damage, in the sum of one hundred thousand dollars, and closing with a prayer for restitution, damages and general relief.

To hold that this complaint was framed solely for the purpose of recovering the possession of the lands therein described, regardless of all right or claim to the waters of the South Yuba River for canal purposes, would be to hold that more than half of the body of the complaint is meaningless, and was inserted without design and for no useful purpose. We cannot so regard it. On the contrary, we are satisfied, from the whole tenor and scope of the complaint, that in the mind of the pleader the trespass upon the plaintiff's alleged water rights by the defendants was the gravamen of the action, and that a restoration to those rights was the principal object sought by the institution of the suit.

It follows that the Court below erred in allowing the motion to strike out, and that the judgment must be reversed and the cause remanded for further proceedings.

Ordered accordingly.


SAWYER, J., dissenting.

I dissent.


On petition for rehearing, SANDERSON, C. J., delivered the following opinion, CURREY, J., concurring:

A petition for rehearing has been filed in which it is suggested that in the interpretation of the original complaint in this case we have adopted the wrong rule of construction. We adopted the rule prescribed in the seventieth section of the code of procedure, which is in the following language:

"In the construction of a pleading for the purpose of deter-

ming its effects, its allegations shall be liberally construed with a view to substantial justice between the parties."

If the foregoing rule can have any application whatever it is to a case like the present.

The common law rule that a pleading must be taken most strongly against the pleader where the language used is ambiguous has not, as counsel seems to suppose, been forgotten by us; but we did not fall into the error of supposing that it had any application to the question presented by the record in this case. Where the pleader stands upon his pleading and maintains its sufficiency in law in the presence of a demurrer or other hostile attack, the rule to which counsel appeals with so much confidence undoubtedly applies. In such a case all doubts are to be resolved against the pleader. He asks no mercy and is entitled to no quarter. But that is not this case. Here the pleader confesses that his pleading is bad, and that it imperfectly and ambiguously expresses his meaning and intent, and he therefore appeals to the mercy of the Court to be allowed to amend it "in furtherance of justice," so as to present more clearly his cause of complaint. To such a case, the rule under consideration, which is a rule of war and not of mercy, can have no possible application; on the contrary, the utmost liberality, consistent with the ends of justice, ought to be exercised by the Court.

But it is, in effect, further claimed that the rule in question ought to be applied to this case at least, because the plaintiff has allowed it to sleep in the Clerk's office for nearly ten years. If the case has been allowed to sleep to the prejudice of the defendants, the fault is theirs. They have had it in their power to force the case to a final result at any time, as much so as the plaintiff. Why the case was thus allowed to sleep is entirely unexplained by the record, and we are bound to presume that it was by mutual consent. Such being the case, neither party can complain of the delay, whether there was any good cause for it or not.

Rehearing denied.

SHAFTER, J., concurring specially.

I concur in the order.

Mr. Justice RHODES and Mr. Justice SAWYER did not express any opinion on the petition for rehearing.