## STEPHEN MARSHALL v. OSCAR L. SHAFTER, JAMES McM. SHAFTER, TRENOR W. PARK, AND SOLOMON HEYDENFELDT et als.

EVIDENCE IN EJECTMENT.—The defendant in ejectment may, under a general denial in his answer, give in evidence title in himself.

ANSWER IN EJECTMENT.—An allegation in an answer of the defendant in ejectment, of title in himself, does not constitute new matter, and is only equivalent to a general denial of title in the plaintiff.

COMPLAINT IN EJECTMENT.—An allegation in a complaint in ejectment, that the plaintiff, on a day named, "was possessed of" certain lands therein described "which said premises the said plaintiff claims in fee simple absolute," is an allegation of title in the plaintiff to the premises in fee simple absolute.

CONSTRUCTION OF PLEADINGS.—The rule requiring the pleading to be most strongly construed against the pleader does not require such a construction to be given (if it will reasonably bear a different one) as will make the pleading absurd.

FACTS IN ISSUE AND PROBATIVE FACTS.—The title of the plaintiff is the ultimate fact, the fact in issue, upon which a recovery must be had in ejectment. The facts established by the plaintiff going to support his alleged title are probative facts, which, if disputed by the defendant, are facts in controversy.

AVERMENT OF OUSTER IN COMPLAINT.—It is not necessary in a complaint in ejectment to aver an ouster by the defendant. An averment of a wrongful withholding of the possession by the defendant is equivalent to an averment of an ouster.

WHAT IS TRIED IN EJECTMENT.—It is the right to the possession as between the parties, that is tried in ejectment, and this right to the possession is title.

JUDGMENT IN EJECTMENT.—The party who recovers in ejectment, after a trial on the merits, is successful because his is the best title, whether the plaintiff recovers upon title presumed from prior possession, or the defendant in possession recovers upon the legal presumption of title until true title or prior possession is shown in the plaintiff.

ISSUE IN EJECTMENT AS TO TITLE.—If the plaintiff, in his complaint in ejectment, avers title in himself, and the defendant interposes a general denial, the respective titles of the plaintiff and the defendant are put in issue.

WHEN JUDGMENT IN EJECTMENT IS AN ESTOPPEL.—If the respective titles of the parties, or their right to the possession of the demanded premises, are put in issue

and tried, in ejectment, and the plaintiff recovers judgment for possession, the judgment is an estoppel, and the defendant to avoid the estoppel in a subsequent action to recover the same premises, must show some other right of possession than he had when the judgment was rendered.

IDEM.—The fact that a judgment in ejectment is not that plaintiff recover the title, but only that he recover the possession, does not prevent the judgment from being an estoppel as to whatever rights the parties respectively possessed.

TESTIMONY IN EJECTMENT.—If the plaintiff in ejectment recovers upon the ground that, as a redemptioner, he had redeemed the demanded premises from a purchase made at a judicial sale by the defendant, and the defendant afterwards sues him to recover the same premises, he cannot introduce testimony to show that the redemption was not in fact made, even if in the second trial the defendant introduce his redemption deed.

TESTIMONY TO IMPEACH JUDGMENT.—Testimony cannot be introduced to show that a former judgment between the same parties upon the same subject matter was erroneous.

ESTOPPEL BY JUDGMENT.—If in an action to set aside a deed as a cloud on plaintiff's title there is more than one defendant, and plaintiff recovers judgment against one, but the bill is dismissed as to the other defendant, this judgment does not estop plaintiff as to the title, in a suit to recover possession of the same land afterwards brought by the defendant as to whom the bill was dismissed.

JUDGMENT IN ACTION TO SET ASIDE DEED.—A judgment in favor of the plaintiff, against one of several defendants, in an action to set aside a deed as a cloud upon the plaintiff's title, is an adjudication that the title is in the plaintiff.

APPEAL from the District Court, Twelfth Judicial District, City and County of San Francisco.

Action to recover possession of an undivided half of eleven square leagues of land, known as the Punta de Reyes Ranch, lying in Marin County, and also two square leagues of land, adjoining said eleven leagues, and lying in the same county. The first tract was granted by Manuel Micheltoreno, Governor of Upper California, to Antonio Maria Osio, on the 30th day of November, 1843, and was afterwards confirmed by the Board of Land Commissioners to Andrew Randall. The second tract was granted by Juan B. Alvarado, Governor of Upper California, to Joseph F. Snook, on the 8th day of June, 1839, and was also confirmed by the Commissioners, to said Randall.

The plaintiff averred in his complaint that on the 3d day of September, 1860, he was the owner in fee simple and seized of and as such entitled to the possession of the demanded

23

premises, and that while so the owner and entitled to the possession the defendants took unlawful possession, etc.

The defendants' answer consisted of three parts : First, a general denial. Second, an allegation that long before and at and since the 3d day of September, 1860, and since the 6th day of May, 1857, the defendants, O. L. Shafter, J. McM. Shafter, T. W. Park, and Solomon Heydenfeldt, had been the owners in fee simple of the demanded premises, and had been in possession of the same as owners, and by the other defendants, who were their tenants. Third, the answer set up that on the 21st day of February, 1857, Robert McMillan, the defendants' grantor, commenced an action in the District Court of the Seventh Judicial District, Marin County, against Thomas G. Richards, Samuel F. Reynolds, and John Reynolds, the plaintiff's grantors, to recover possession of · the same premises, and. that such proceedings were had in the action that on the 31st day of May, 1858, the District Court (in pursuance of a judgment of the Supreme Court reversing a former judgment for the defendants in the action, and directing a judgment to be entered for the plaintiff) gave judgment, awarding said McMillan possession of the premises ; and that on the 6th day of May, 1857, the defendants, O. L. Shafter, James McM. Shafter, and S. Heydenfeldt, purchased the land from said McMillan, and that in the year 1860, about the 3d of September, S. F. Reynolds and John Reynolds, the defendants in the suit of *McMillan* v. *Richards* and themselves, executed to the plaintiff Marshall a deed of the premises, and that Marshall had no other title. The answer prayed judgment that the plaintiff be estopped by the record of the judgment in *McMillan* v. *Richards et al.*, from having or maintaining his action. The case of *McMillan* v. *Richards* will be found reported in 9 Cal. 365, where there is a full statement of the facts out of which the present controversy arose.

The complaint in the case of *McMillan* v. *Richards* was as follows :

"The above named plaintiff, resident in the City and County of San Francisco and State of California, complains against the above named defendants, and for cause of action says that heretofore, to wit, on the 17th day of March, A. D. 1856, the said plaintiff was possessed of certain lands with the appurtenances, situate in the County of Marin and State of California, described as follows, to wit: All that tract of land situate in Marin County, State of California, and bounded on the westerly side by the Pacific Ocean, on the northerly side by the Estero of Tomales, on the southerly side by Sir Francis Drake's Bay and the ocean, and on the easterly side by lands granted to Rafael Garcia and to Joseph Francis Snook, being all that grant of land for eleven square leagues by Manuel Micheltoreno, Governor of Upper California, to Antonio Maria Osio, November 30th, 1843, and since confirmed to Andrew Randall by the Board of United States Land Commissioners appointed to ascertain and settle private land claims in the State of California, Case No. 666—for a further and more particular description of said land, reference is made to the grant and papers on file in the office of said Commissioners, in said Case No. 666; and, also, all that tract or parcel of land situate in Marin County, State of California, adjoining the land granted to James Richard Berri, being the grant of land made to Joseph Francis Snook by Juan B. Alvarado, Governor of California, on the 8th day of June, A. D. 1839, for two square leagues of land, and confirmed to the said Snook by the Departmental Junta of California on May 22d, 1840, as the land of Tomales, and being the land since confirmed to said Andrew Randall by the Board of United States Land Commissioners appointed to ascertain and settle private land claims in the State of California, in Case No. 772—for a further and more particular description of which, reference is made to the grant and papers on file in the office of said Commissioners in said Case No. 772; and the said parcel of land adjoins the parcel first hereinbefore described, and both lie in and constitute one body of land, which said premises the said plaintiff claims in fee simple absolute.

"And the said plaintiff, being so possessed thereof, and being so the owner thereof, as aforesaid, the said defendants afterwards, to wit, on the 18th day of March, A. D. 1856, entered into the said premises and ejected the plaintiff therefrom, and have ever since, and now do, unjustly withhold from the said plaintiff the possession thereof, taking the whole rents and profits to themselves, to the damage of the plaintiff, as he says, ten thousand dollars.

"And for another and distinct cause of action the plaintiff says that heretofore, to wit, on the 14th day of January, A. D. 1857, he was the owner in fee simple absolute of one undivided third part of the lands in the first count described, and by reason thereof was then and there entitled, and ever since has been entitled, by reason of such ownership, to the sole possession of said lands as against all and singular the said defendants; and the plaintiff further says that afterwards, to wit, on the day aforesaid, the said defendants wrongfully disseized, deforced, and dispossessed the said plaintiff of the said lands, and they then and there unlawfully and without leave or license of the said plaintiff, and against his consent, took and withheld, and ever since have withheld, and now withhold from him the possession of said lands, taking the whole rents and profits to themselves, to the damage of the plaintiff, as he says, ten thousand dollars.

"Wherefore, he prays judgment, that the said lands may be restored to him, and for ten thousand dollars damages, and for his costs."

The answer of the defendants was as follows:

"Thomas G. Richards, Samuel F. Reynolds, and John Reynolds, three of the defendants in the above entitled action named, by John Currey, their attorney, answering the complaint of the said plaintiff, say: They deny each and every allegation in said complaint contained.

"And for further answer, these defendants say that for a long time, to wit, for the space of one year next before the commencement of this action, they have been and still are the

owners of the real estate in said complaint mentioned and described, and therefore lawfully seized as the owners of the same, and as such owners were, at the commencement of this action, lawfully in the possession of said real estate.

"And these defendants further say that for a long time, to wit, for one year next before the commencement of this action, the said defendant Richards and the said Samuel F. Reynolds have been and still are owners, as tenants in common, of said real estate, excepting about three thousand acres of the land mentioned in said complaint, lying and being at the extreme southern point of said real estate described as aforesaid, which point of land is called 'Punta de los Reyes' Point; and that at the commencement of this action the said defendant, John Reynolds, was and still is the owner of the above mentioned three thousand acres of said real estate situated and being at the extreme southern point of said land described in said complaint, which point is commonly called 'Punta de los Reyes' Point; and that at the commencement of this action these defendants were respectively seized and in possession of said real estate according to their respective rights and interests therein, as herein stated, and are still so lawfully seized and possessed of the same.

"Wherefore, defendants pray for judgment against the plaintiff for their costs, etc."

The judgment finally entered by the District Court in said action was that the plaintiff have and recover possession of the premises described in the complaint. After this judgment, and on the 3d day of September, 1860, John Reynolds and S. F. Reynolds conveyed their right, title and interest in the demanded premises to plaintiff, Marshall, for the purpose of having the plaintiff hold the same in trust for them.

This action was tried before the Court at the July term, 1865, without a jury. On the trial, the plaintiff, to maintain the issues therein on his part, offered and read in evidence two patents from the United States to Andrew Randall, in due form, each dated on the 4th day of June, A. D. 1860, and

based upon two several grants made by the Mexican Government to Antonio M. Osio, in 1839 and 1843 respectively, to the lands described in the complaint, which had been duly confirmed to said Andrew Randall by the Board of United States Commissioners to settle private land claims in the State of California. The plaintiff then proved a deraignment of title to Samuel F. Reynolds and John Reynolds, from said Randall. Plaintiff then introduced and read in evidence a deed from said Samuel F. Reynolds and John Reynolds, conveying to him all their right, title and interest in and to said premises, which deed bears date September 3d, 1860. The defendants then offered in evidence, as an estoppel, under the third plea, and for no other purpose, the judgment roll in *McMillan* v. *Richards et al.* To the introduction and reading of which judgment roll in evidence the plaintiff objected, on the grounds that it was irrelevant, immaterial and insufficient for the purpose for which it was offered; and further, that it was inadmissible under the pleading—which objections were each and all by the Court overruled, and the plaintiff duly excepted—and the said judgment roll was read in evidence. The defendants then offered in evidence a deed from said McMillan to the defendants Shafters, Park, and Heydenfeldt, dated May 6th, 1857, recorded August 22d, 1857, conveying the whole of the demanded premises to them. The plaintiff during the trial offered in evidence the judgment roll in the case of the Shafters, Park, and Heydenfeldt against Elizabeth A. Reynolds, John Reynolds, Samuel F. Reynolds, and Thomas G. Richards, which action was commenced in the District Court of the Seventh Judicial District, Marin County, on the 1st day of June, 1858, to set aside a deed executed to said Elizabeth A. Reynolds by John W. Hendrie, as a cloud upon the plaintiff's title. The two Reynolds, S. F. and John, appeared and answered in the action. Richards made default, and a judgment was rendered dismissing it as to S. F. and John Reynolds, but adjudging the deed null and void, and directing the defendant, Elizabeth Reynolds, to execute a deed to the plaintiffs.

The Court below in this action rendered judgment in favor of the defendants, and the plaintiff appealed.

The other facts are stated in the opinion of the Court.

*John Reynolds*, for Appellant.

The judgment in *McMillan* v. *Richards et als.*, as pleaded, is no bar to this action. The action in which it was recovered appears from this answer to have been simply an action of ejectment to recover the possession of the premises in controversy. The averment of the answer is : " That Robert Mc-Millan, on the 21st day of February, 1857, filed in the Seventh District Court his complaint against Thomas G. Richards, John G. Hyatt, James P. Williamson, Josiah H. Swain, George Randall, A. W. Sanford, John Doe, Richard Roe, Samuel F. Reynolds, and John Reynolds, by which complaint said Mc-Millan complained and declared against said defendants in a plea for that he, the said McMillan, on the 17th day of March, 1856, was possessed of the same premises in the complaint in this action mentioned, and therein claimed the same in fee simple absolute ; and that said McMillan being so possessed thereof and being so the owner thereof as aforesaid, the said defendants, in that action mentioned, afterwards, to wit : on the 18th day of March, 1856, entered into the said premises and ejected the said McMillan therefrom, and from that time did unjustly withhold from the said McMillan the possession thereof, taking the whole rents and profits to themselves, to the damage of the said McMillan ten thousand dollars." (*Long* v. *Neville*, 29 Cal. 131 ; *Wattson* v. *Dowling*, 26 Cal. 127 ; *Hawkins* v. *Reichert*, 28 Cal. 535 ; *Vance* v. *Olinger*, 27 Cal. 358 ; *Garner* v. *Marshall*, 9 Cal. 270 ; *Dutton* v. *Warschauer*, 21 Cal. 609 ; *Lyle* v. *Rollins*, 25 Cal. 440 ; *Yount* v. *Howell*, 14 Cal. 468 ; *Calderwood* v. *Braly*, 28 Cal. 97.) The joint answer of Richards, and S. F. and J. Reynolds, averred after a general denial, " for a further answer," that they were owners in fee of the premises, but did not claim any affirmative relief. It stated no more than might have been given in evidence under the general denial, and did not therefore contain any

new matter, and no issue could be made upon it. (*Wood-worth* v. *Knowlton*, 22 Cal. 167; *Bell* v. *Brown*, 22 Cal. 681; *Frisch* v. *Caler*, 21 Cal. 74; *Goddard* v. *Fulton*, 21 Cal. 435; Prac. Act, Sec. 153, Sub. 2.) It does not even appear that the defendants pleaded title as a separate defense. (Prac. Act, Sect. 64, Sub. 7.) What issues were formed in the action of *McMillan* v. *Richards et als.*, and what the character of that action was, must therefore be determined from McMillan's complaint alone. The answer in this case does not aver that any issue was tendered by that complaint, in any manner affecting the title; nor does the judgment purport to determine any question relating to the title. There is no issue shown to have been tried in that action, which can estop the plaintiff from maintaining this. What the *issues* are in any action must be determined by the *material* averments of the complaint, and the *new matter* in the answer, upon which some affirmative relief is claimed. (Prac. Act, Sec. 153.) And as the answer of the defendants, under whom the plaintiff in this suit claims, contained no new matter, the averments of McMillan's complaint must alone determine what the issues were, to be tried in his suit. All that is said in the answer in this case as to McMillan's having pleaded title in that, is that he therein claimed the same premises in fee simple absolute. This is not equivalent to an averment that he counted on title in that case. Estoppels must be pleaded with exactness and certainty. (2 Smith's Leading Cases, 489; Coke on Litt. 352 *b*.) It was claimed in the Court below, that the findings of fact, upon which the judgment was pronounced in that case, estopped the plaintiff in this. The findings of the Court are the ascertainment of probative facts, from which ultimate conclusions are determined. They find the facts *in controversy*, as distinguishable from the facts *in issue*. It is the result or conclusion to which the Court comes in its judgment upon the facts in controversy—limited by the issues made by the pleadings—that determines the extent of the estoppel. In cases tried by the Court, without a jury, the Court finds the *several facts* upon which a *single issue* is decided. (Prac. Act, Sec. 180.)

In every case the effect of a verdict or the findings of the
Court, as an estoppel, must be limited to the issues made by
the pleadings.   In *McMillan* v. *Richards*, the complaint averred
that McMillan was possessed of the premises on the 17th day
of March, 1856,   *   *   *   *   which said premises the said
plaintiff claims in fee simple absolute." These are the only
direct averments as to title, or claim of title.   It will hardly
be contended that the simple averment of possession presents
any issue upon the title; and I think it can with as little
plausibility be claimed by the learned gentleman upon the
other side, that a mere assertion that the plaintiff claims title
in fee, when he files his complaint, presents any issue what-
ever.   An averment that a party has title, is quite a different
proposition from saying that he was in possession on a certain
day, and that he *now* claims title from such possession.   It is
not even averred that he claimed title while he was in pos-
session.   The complaint then proceeds to make the averments
which really constitute the *gravamen* of the action, " that
being so in possession, and so the owner thereof, as aforesaid,
the said defendants afterwards, to wit, on the 18th day of
March, 1856, entered into the said premises and ejected the
plaintiff therefrom, and have ever since, and now do, unjustly
withhold from the plaintiff the possession thereof, taking the
whole rents and profit to themselves, to the damage of the
plaintiff, as he says, of $10,000." There is no averment of
ownership in this part of the complaint, but only a recital
limited by the previous averment, which is only such owner-
ship as results from a possession without claim of title; for
the claim of title is not averred to have been made until after
the ouster.   The *gravamen* of that action was the ouster, and,
incident to that, the damages resulting from it.   And the com-
plaint is evidently drawn with the design of presenting as few
issues as possible to sustain this cause of action.   There is
nothing, I submit, in that complaint which " can be tortured "
into an averment of title in McMillan.   If the plaintiffs in the
action of the *Shafters, Park*, and *Heydenfeldt* against *Elizabeth*

24

*A. Reynolds et al.*, to set aside the deed as a cloud on their title, had prevailed against all the defendants, they could have had a decree which would have estopped all those defendants from asserting that plaintiffs therein had not the title and right of possession. If the decree which I have supposed could have been upheld. upon the bill confessed, or all its averments proven, then I submit that a dismissal on a trial has the same effect as an estoppel, in the defendants' favor, as a decree to the full extent warranted by the averments of the bill would have operated in favor of the plaintiffs. The effect of the dismissal of a bill in equity on a trial and full hearing, is the same as a verdict for defendant in an action at law. (*Holmes* v. *Remson*, 7 Johns. Ch. 286, see page 290 for opinion ; *Morgan* v. *Patten*, 4 Monroe, 453–8 ; Cowen and Hill's Notes, note 639 to p. 358 of text.) I submit with confidence that the issue upon plaintiffs' title in that case was tried and decided adversely to them, as to the defendants J. and S. F. Reynolds, for the decree entered would have been a legal impossibility without such decision. (2 Kernan, 187–189 ; *Davis* v. *Tallcot;* 2 Smith's L. Cases, 494.)

*J. McM. Shafter*, for Respondents.

Accepting appellant's statement as to the nature of the former action, one thing is certain : In it as of April 29th, 1857, McMillan *obtained judgment "for the seizin and possession"* of the premises in controversy of the very parties under whom the plaintiff, Marshall, directly claims. The words "seizin and possession" are in the answer; they are truly plead, and the demurrer admits this truth. Put the case, then, upon the appellant's own ground, and the former recovery is a bar to this action. I admit this action can be looked at as it concerns the title and estate ; in other words, right of the party in and to the property, as well as to the precise aid which is prayed in the complaint. In this last view, the action is possessory ; nothing but possession is directly recovered. In this respect the former action and the present are identical. The

prayer of judgment in the complaint, in each action, is for possession. The former judgment is admitted to be conclusive that April 29th, A. D. 1857, McMillan had the right of possession. That right of possession was continuous in its nature, and must be presumed to continue until it is affirmatively shown to have terminated. In the ancient action of ejectment the judgment disclosed the duration of the term, and on its face limited the duration of the right of possession. Here, upon the face of the judgment, the term is unlimited, and the presumption is in favor of the continuance of the right. (1 Green. Ev. Sec. 41.) In *Caperton* v. *Schmidt*, 26 Cal. 513, in speaking of the finality of the judgment, the Court say that it is limited to the right of the parties as they existed at the time of judgment, and upon any new right arising after judgment, the estoppel does not operate. While the plaintiff does not state the proposition in terms, yet it is distinctly involved in the terms he does use, that he considers this action to go upon a *gravamen* entirely different from that tried in the former action, that in that action the temporary right of possession alone was tried, while in this, as plaintiff avers, " he is the owner in fee simple, and seized of, and, as such, entitled to the possession " of the premises, he has emancipated himself from all the rules belonging to that " possessory action " of ejectment, and from the effect of the former recovery. In this connection the Court's attention is directed to the fact that the title under which plaintiff now claims *antedates the former judgment.* Plaintiff now claims that that title must not be considered as having been litigated, because the *former pleadings* and judgment did not state the question of title with proper precision, so that it can be seen therefrom that the title was decided. At the same time their present action goes directly upon the ground that their claim *would have been a valid defense* to McMillan's action, as it is now claimed to be a valid ground of recovery against his grantees. (*Le Guen* v. *Goveneur*, 1 John. Cases, 436 ; *Bruen* v. *Hone*, 2 Bar. R. 586 ; Hill & Cowen's Notes, Vol. II, 20–1. The point of the appellant is, that McMillan's assertion that " he claims the premises

in fee simple absolute," does not tender an issue upon the title. The statement in the complaint of the facts must be " in ordinary and concise language." The definition of pleadings is "the formal allegation by the parties of their respective claims and defenses." Supposing a plaintiff should commence this action by these words : " He complains of the defendant and for cause of action claims he was owner and possessed ; " would not this be a good averment ? Is the language not ordinary and concise ? Is it not as ordinary and concise as " in fact saith," " for that whereas," " heretofore," " to wit ?" Furthermore, does it not advise the defendant (the true object of the complaint) of precisely the demand made upon him ? But the complaint does not stop here. It proceeds : " And the said plaintiff being so possessed thereof, and being so the owner thereof, as aforesaid," the defendant ousted him. 1 Chitty Pleadings, 325, " In point of form an averment may be in *any words amounting* to an express allegation, as that plaintiff *avers*, or *in fact saith*, or *although*, or *because*, or *with this*, or *being*, etc." The words " being so the owner thereof " are then even in point of form within the strictest rule. If the complaint contained only the averment of possession, then the general denial put that in issue. I contend that even under such an averment, plaintiff could have proved title, because the statute attaches to title—possession. Proof of title then would support the issue upon plaintiff's part. But however that may be, the general denial was enough for the defendants. *Why, then, did defendants put in an answer averring title, seizin, and possession in themselves ?* Such course could only be justified by their conviction that our complaint averred title in McMillan, or that having averred possession alone, they were entitled to bring forward *their title* as new matter, and under it to justify their possession. No matter what their view was, their answer was not a nullity. It tendered an issue upon the defendants' title, and the statute attached to it a traverse by McMillan.

By the Court, RHODES, J.:

The leading question in this case, is whether the defendants can rely upon, and are protected by the recovery in the case of *McMillan* v. *Richards et al.*, set up in their third answer by way of estoppel. Counsel have discussed the case with great ability, and have urged many points in support of their respective positions, and we have given them the attentive consideration that the magnitude of the interests involved, and the importance of the questions argued, would require at our hands; but the line of argument we shall adopt in deciding the controversy will render it unnecessary to discuss or even allude to very many of the propositions advanced. The rules laid down in *Caperton* v. *Schmidt*, 26 Cal. 479; *Gray* v. *Dougherty*, 25 Cal. 266; and *Garwood* v. *Garwood*, 29 Cal. 514, are decisive of every question necessarily arising in this branch of the case, and it will be unnecessary to go beyond the principles announced and affirmed in those cases. The plaintiff does not propose to attack the decision in *Caperton* v. *Schmidt*, nor deny the authority of any of the doctrines therein advanced, but insists that under that decision and those doctrines, the defendants cannot avail themselves of the former judgment as a bar, nor of the fact in issue upon which the recovery proceeds, as an estoppel in this action.

The leading facts out of which the controversy in the former case arose may be briefly stated as follows: Osio mortgaged the premises in 1851, and in 1853 he conveyed the legal title to Randall. Cary, the assignee of the mortgage, in 1854 obtained judgment of foreclosure, and the appeal taken therefrom by Randall was dismissed in 1856. The premises were sold under the foreclosure, June 14th, 1856, and were conveyed to Hyatt, January 19th, 1857, and within a month thereafter he conveyed the same to Richards, S. F. Reynolds, and J. Reynolds. On the 7th of February, 1855, McMillan filed in the Recorder's office a transcript of the docket of a judgment in his favor against Randall, and under an execution issued upon the judgment, the premises were sold to McMil-

lan, March 17th, 1856, and in pursuance thereof, on the 26th of December, 1856, the Sheriff executed to him a conveyance of the premises. On the 13th of December, 1856, McMillan served on the Sheriff a notice of redemption of the promises from the sale under the Cary foreclosure, and paid him a certain sum of money which, it was claimed on his part, operated as a redemption, and in 1858, subsequent to the commencement of the suit of *McMillan* v. *Richards,* the Sheriff, in pursuance of the redemption, executed a deed to Shafter, Park, and Heydenfeldt, as the vendees of McMillan. The District Court, in the case of *McMillan* v. *Richards,* gave judgment for the defendants, but on appeal the judgment was reversed, and it was ordered that judgment be entered for the plaintiff.

In this case the contest centers in the third answer. We shall not consider separately the demurrer to the answer and the objections to the admission of the judgment roll in *McMillan* v. *Richards,* for both questions rest on the same ground. The plaintiff contends that title, though it may have been a fact in controversy, was not a fact in issue in that case ; that in order to ascertain what facts were in issue, we must look to the complaint alone. In view of the system of pleading and practice in force in this State, under which the defendant in ejectment may plead new matter, raising a material issue in the case, the argument of the plaintiff would not lead to the conclusion, that in the inquiry for the issues recourse must be had solely to the complaint. It is proper at this point, however, to say that it is settled beyond all controversy in this' State that the defendant may, under the general denial, give in evidence title in himself, and it follows that the allegation of such title in the answer does not constitute new matter, and therefore the allegation of title in the defendant does not present a new issue.

What was the issue tendered in the complaint in *McMillan* v. *Richards?* It is therein alleged that the plaintiff, on a day named, "was possessed of certain lands therein described, which said premises the said plaintiff claims in fee simple absolute." The plaintiff insists that this is not an allegation

of ownership in fee, but amounts only to this, that the plaintiff claims such title, without saying that he in fact holds it; that a denial of that branch of the allegation would amount only to a denial that the plaintiff so claimed such title, which of course would be an immaterial issue in the action of ejectment. The defendant argues that the word "claims" is equivalent to "says," "avers," "states," or "shows." But substituting either of those words for "claims," it would be necessary to interpolate the words "he owns," or others of the same import, in order to make the sentence sufficient by itself to present the issue of title. "Claim," when used as a noun and in relation to land, has, in most of the States, a signification beyond that of a mere demand—a right not reduced to enjoyment but to be enforced against another—but it is used as well to express all the rights which a person holds and enjoys in the land. Pre-emption claims, homestead claims, and mining claims are familiar instances. A conveyance of the grantor's claim to the land passes all the title he holds. And so of the verb "claim." In common speech, a person says he claims the land to which he has the title, and in a contest for the possession, each party, relying on title alone, would perhaps as frequently say that he claimed title, as that he held the title.

The allegation mentioned, is followed by the further allegation that he "being so possessed thereof, and being so the owner thereof as aforesaid," the defendant entered, ejected the plaintiff and unjustly withholds the possession, etc. This clearly indicates that the plaintiff intended to aver and understood that he had averred title in himself, in fee, and reading both averments together, whatever doubt may have arisen on account of the use of the word *claims* is cleared up, and the language must be construed to amount to an averment of title in the premises in fee simple absolute. The rule requiring the pleading to be most strongly construed against the pleader, does not require such a construction to be given (if it will reasonably bear a different one) as will make the pleading absurd. Such would be the case if the plaintiff should be held to have averred that he asked, sought for or demanded the title in fee.

It may be doubted whether the rule of the common law invoked by counsel, has any application to a case like the present. (See Sec. 70, Practice Act; *Nevada Co. & Sac. Canal Co.* v. *Kidd*, 28 Cal. 683.) That the defendant in that case understood it as an averment of title, is apparent from the fact that no objection was interposed to the count on that ground, which would doubtless have been done, had they understood the averment as they now do; for if that is not an averment of title in fee, there is nothing in that count showing that the plaintiff was still entitled to the possession. An examination of the opinion of this Court in that case, as reported in 9 Cal. 365, clearly shows that the Court understood the complaint to tender issue upon title; and though the point before us was not presented or expressly decided in that case, such must have been the construction of that allegation, for the whole decision goes upon the question of title.

The second count, though it clearly presents the issue of title in fee to the undivided third of the premises, need not be noticed, for both in the District Court and this Court, the contest was confined to title to the whole premises.

In our opinion, the title of the plaintiff in that suit was expressly put in issue by the pleadings.

The other and more important branch of the question is, was the title of the defendants in that action also at issue?

No light is thrown on this question by the answers in that case, which consist of general denials and the averment of title and the right of possession in themselves—the latter being, as we have said, a general denial in an argumentative form. The averment, when stated according to its logical effect, is "the plaintiff is not the owner or entitled to the possession, because the defendant is the owner and entitled to the possession."

The findings in that case contain matters of evidence, facts in controversy, and facts in issue. It may be admitted without hesitation that it is impossible, under the very general system of pleading adopted and repeatedly recognized as sufficient in this State, in the action of ejectment, to draw the line with accuracy between facts in controversy and facts in

issue. It may be stated generally that the ultimate facts upon which the recovery is had—facts which if found the other way the recovery must have been different—are facts in issue. Thus, in *Hardy* v. *Johnson,* 1 Wal. 371, the recovery was based on the facts that the plaintiff was the owner of one undivided twentieth of the premises, and that the defendant was in possession without title. All the facts established by the plaintiff going to support his alleged title were probative facts, which, if disputed by the defendant, were facts in controversy; and the ultimate fact in proof of which the probative facts were offered, was title in the plaintiff, and that was a fact in issue. In the former action the District Court did not directly find title in either party, but among the conclusions of law it is stated that the plaintiff (McMillan) was not on the day named, or afterward, the owner in fee simple absolute or otherwise, of the premises. That matter should have had its place among the findings of fact, and not the conclusions of law, for if title in fee or otherwise is a fact that may properly be alleged in the complaint, it is an ultimate fact that should be found by the Court. The findings show that McMillan had acquired the legal title from Randall, subject to Cary's judgment of foreclosure and the sale made under it; that McMillan attempted to redeem from that sale; and that, in pursuance of the sale, the Sheriff conveyed the premises to Hyatt, and that Hyatt conveyed the premises to Richards and others, under whom the present plaintiff claims. The contest, as appears from the findings, was narrowed down to a point in respect to the redemption, and as that should be determined, so must the title. If the redemption was in fact made, the Sheriff's deed to Hyatt was void; but if the proceedings to effect the redemption were not sufficient, then the deed to Hyatt took the legal title formerly conveyed to McMillan. The District Court found that McMillan had not effected a redemption. Hyatt's deed was therefore valid, and his vendees had judgment. On appeal, this Court held that the findings showed that the redemption had been made, and there-

fore Hyatt's deed was unauthorized and void, and judgment was ordered against Hyatt's vendees.   The evidence reported in the findings, the facts in controversy and the facts in issue, all unmistakably point to an issue between the adversary titles claimed by the respective parties.

The same conclusion is reached when the question is looked at from another point of view.   The object of the action of ejectment, so far as the form of the recovery alone indicates it, is to recover the possession of premises which the defendant unlawfully withheld from the plaintiff.   The judgment for the plaintiff determines that he was entitled to the possession, at the commencement of the action and the rendition of the judgment.   (*Yount* v. *Howell,* 14 Cal. 465 ; *Calderwood* v. *Brooks,* 28 Cal. 151 ; *Hardy* v. *Johnson,* 1 Wal. 371.)   The *gravamen* of the action is the wrongful withholding of the possession. An ouster is usually distinctly alleged, but it is not necessary, for the wrongful withholding is an ouster, and none other need be proven.   But although the direct result of a recovery is only a restitution of the possession, the action is still, like ejectment at common law, a suit for the trial of disputed titles to lands.   The judgment proceeds on the sole ground that the plaintiff, when he recovers, is entitled to the possession as against the defendant ; and when the judgment is for the defendant, in case he is found to be in possession, and the action is determined on its merits, it is given on the ground that he is entitled to the possession as against the plaintiff. It is the right to the possession as between the parties that is tried, and that fact, when ascertained, determines how the recovery shall be.   This right to the possession is title—" the means whereby the owner of lands hath the just possession of his property."   (Co. Lit. 345 ; 2 Black. Com. 195.)   The actual title, it is true, may not be in either litigant.   The plaintiff may rely upon the title presumed from the fact of prior possession, and the defendant in possession may rely safely upon the legal presumption of title until the true title or prior possession is shown to be in the plaintiff.   But whether the title exists in presumption or is produced in fact,

it is the title that prevails in the action.   The Court adjudges
that the plaintiff is entitled to the possession of the premises,
when it appears that his title is better than that held by the
defendant, by presumption or in fact.   The party who recov-
ers, after a trial on the merits, is successful in the action,
because his is the better title.   We do not undertake to say
that the parties may not by their pleadings, or in some other
manner, limit the issues to a particular title; but when the
plaintiff alleges that he is the owner in fee and entitled to the
possession—under which of course he may prove a less estate
—and it is adjudged that he recover the possession, the judg-
ment is conclusive that his right to the possession—his title—
is better than that held by the defendant.   If the title of each
party was not put in issue and determined in such case, it
would be difficult, if not impossible, to say what was in issue.

The reports of this and other States, in which the actions
in ejectment are abolished, are replete with cases deciding
what evidence of title is or is not sufficient to maintain the
action, and what title the defendant may show to defeat
the recovery.   It would be absurd to require, as has been
repeatedly done, the defendant to set up in a supplementary
answer in the nature of a plea *puis darrein continuance*, a title
acquired by him after issue joined, if his title was not drawn
in issue.   In *Vance* v. *Olinger*, 27 Cal. 358, the pendency of
a former action by the same plaintiff against the same defend-
ant, and for the possession of the same premises, was set up
by the defendant, and it was held that the answer did not
constitute a defense, because it did not also appear that the
same title was in issue.   In *Wattson* v. *Dowling*, 26 Cal. 125,
it was considered that a purchaser from the defendant, pend-
ing the action of ejectment, was bound by the judgment as an
instrument of evidence, to the same extent that the grantor
would have been, had not the conveyance been made.   This
result could accrue only in consequence of the defendant's
title having been in issue.

It must be admitted by every one, that the recovery ope-
rates as an estoppel to this extent, to preclude the losing

party from denying that as to him, the prevailing party was, at the time of the rendition of the judgment, entitled to the possession. It would seem necessarily to follow that in order to avoid the estoppel the losing party must show some other right of possession than that which he had when the estoppel was created. He is bound to show such other right, because his former claim of right was determined by the recovery.

The plaintiff, while contending that a judgment for the plaintiff is only conclusive that on the day of the commencement of the action he had the right of possession, does not deny that when the plaintiff's title is put in issue by the averments of the complaint, the recovery is conclusive of that issue, and may be relied upon as an estoppel in a subsequent action between the parties for the same premises. The averment of title we alluded to is such as is usually found in the complaint—the general allegation that the plaintiff is the owner, the owner in fee, or the like. If the trial is upon the merits, and the defendant in possession recovers, the recovery as an estoppel, works a complete extinguishment of the plaintiff's title. Is it not possible for the defendant's title also to be brought in issue, so that the adjudication, whether in its favor or against it, may also be pleaded or offered in evidence as an estoppel? We have seen that the allegation of the defendant, that he is seized in fee, is no more or better than a general denial, and if his title—whatever it may be, so only it is a legal title—is not in issue under the denial, it will be necessary for him also to sue, notwithstanding he has just recovered judgment, if he desires an adjudication upon the question of *his title.* Concede, for the sake of argument, that the defendant's title is not drawn in issue under the general denial, and suppose the plaintiff recovers, and that the defendant, not desiring to produce his evidence at that trial, sues the plaintiff in the former action and recovers. Each party then has the benefit of an estoppel in support of his own title— that is, an estoppel conclusive that the title is valid and sufficient when considered by itself, but not that it is valid when set in opposition to the title of his adversary. The process

might be repeated *ad infinitum* with the same results. In tracing out such estoppels to their legitimate consequences, under the familiar rules that estoppels ought to be mutual, estoppel against estoppel, setteth the matter at large, etc., we might agree with Lord Coke that they are a " curious," but not that they are also an " excellent sort of learning." The truth is, there is but one title between the parties to the action to recover the possession of the premises, though there may be many evidences of title. It is impossible. that two persons claiming adversely to each other can at the same time hold such right or title in the premises as will entitle each as against the other to the possession. Each party to a contested action claims the title, out of which the right of possession springs, and the Court determines which of the two holds it. That is the matter which is adjudicated.

In *McMillan* v. *Richards* the defendants were in possession, and from that fact they were presumed to hold the title, and in addition thereto they showed a claim of title apparently regular from Osio. The plaintiff, in order to succeed, was bound to break the chain, and this he attempted to do by showing a redemption before the execution of the Sheriff's deed under which the defendant claimed. As that fact should be determined, so must the title. The fact was important only as it related to title. It did not directly touch the possession. This Court determined that the redemption was sufficient, and consequently the plaintiff's claim of title was valid and that of the defendants invalid, and the possession was ordered to be delivered to the party in whom was the title. The determination had a necessary bearing upon the defendant's title, and in holding that the redemption left the title in the plaintiff, it necessarily resulted that it did not pass to the defendants. The doctrine expressed in *Caperton* v. *Schmidt*, that " the estoppel of the verdict and judgment is necessarily limited to the rights of the parties as they exist at the time when such verdict and judgment are rendered, and cannot preclude either party from showing that their rights have been varied or extinguished at a subsequent period,"

would necessarily imply that whatever rights they severally possessed at the time to which the verdict and judgment relate (unless the issues were limited by the pleadings, by stipulation or otherwise) were settled by the recovery.

No sufficient reason, in our opinion, is given why the matters that have once been judicially determined in the action of ejectment, may be again drawn in question between the same parties, when they could not in an action of another character. In ejectment as in other actions, the parties rely strictly upon their rights in the matter in litigation. No argument can be drawn from the fact that the judgment is not that the plaintiff recover the title, but only the possession, for a similar result accrues in the action of replevin, though the title to the personal property is confessedly in issue. In trespass to lands, whatever may be the form of the issues, the recovery is only of damages, and yet, as in *Outram* v. *Morewood*, 3 East. 346, the losing party is estopped in another action from averring contrary to the title as found in the former suit. (See cases cited in note to *Duchess of Kingston's Case*, 2 Smith's Lead. Cases.)

The plaintiff contends that neither the deraignment of title, nor the redemption by McMillan, nor his payment for that purpose were in issue, but came only collaterally in controversy. For what purpose were they drawn in controversy? They would not of themselves show who was entitled to the possession, and would not have any direct bearing on that issue, and were only important as they tended to prove title, from which alone the right to the possession was deduced.

We are of the opinion that the third answer is sufficient in law, and that the former recovery and the issues found in that action estop the plaintiff in this action.

The offer to show that the redemption was not in fact made was properly rejected, for if the proof had been made it would have shown that the judgment of this Court on the former appeal was improper and erroneous, and have thus directly overthrown the estoppel. The District Court will not assume the authority to revise the judgment of the Supreme Court.

The door was not open for the introduction of the proposed proof, in consequence of the production by the defendants of the redemption deed, for they did not thereby go behind the estoppel set up by them, but they claimed that by virtue of the recovery and as a consequence of the adjudication of this Court, they were entitled to the deed.

The object of the suit of *Shafter* v. *Reynolds* was to set aside a certain deed in the hands of Elizabeth Reynolds, as a cloud upon the title of the plaintiffs in that action. It does not appear from the record in that case that the title now claimed by the present plaintiff was involved in the action. (*Hamm* v. *Arnold*, 23 Cal. 373 ; *Hager* v. *Schindler*, 29 Cal. 57.) And if it can be said that it was actually or necessarily in issue, it would be difficult to see how the adjudication could have been in their favor, for it must have been found that the plaintiffs in that action held the title, otherwise there would have been no basis for the judgment that the deed to Elizabeth Reynolds was null and void, and that she convey to the plaintiffs all the claim of title she derived through that deed. The Court could not have granted the plaintiffs any relief against the deed had it been found that title was in any of the defendants.

Judgment affirmed.


SAWYER, J., concurring :

I am satisfied that the title was directly in issue and determined, and not merely collaterally litigated in *McMillan* v. *Richards*. Title was a fact in issue as distinguished from a fact in controversy within the principles of the case of *Caperton* v. *Schmidt*, 26 Cal. 494. The plaintiff alleges in his complaint that on a certain day " he was possessed of" the lands in controversy, " with the appurtenances, * * * which said premises the said plaintiff claims in fee simple absolute. And the said plaintiff, being so possessed thereof, and being so the owner thereof, as aforesaid, the said defendants afterwards " entered into said premises and ejected plaintiff. This is, at

least, as clearly an allegation of title as that contained in the statutory form of a petition in an action for the recovery of land in Georgia, which is: "The petition of A. B. showeth that C. D. is in possession of a certain tract of land in said county (here describe the land) to which your petitioner claims title," etc.   This is the only allegation of title, yet the determination of title upon a petition of this kind was held conclusive in a subsequent action between the same parties to recover the same land. (*Caperton* v. *Schmidt*, 26 Cal. 507; *Sims* v. *Smith*, 19 Geo. 124.)   In *McMillan* v. *Richards*, the defendants also not merely took issue on the allegations of the complaint, but affirmatively set up title in themselves.   Thus, both parties claimed title, and title was the ultimate fact in issue, and actually and directly litigated and necessarily determined.   The parties and the Court acted throughout upon the theory that issue was directly taken upon title—that it was the real issue in the case.   In the present action the plaintiff put in precisely the same evidence of title that the defendants relied on to establish their title in *McMillan* v. *Richards*, and no other.   The parties in the present action are in privity with the parties to *McMillan* v. *Richards*, and no new title or change in the circumstances since the trial of that action is shown.   The Court has found the title to be the same, and I think the plaintiff is clearly estopped from again litigating it. The matter of estoppel is sufficiently pleaded.   I see no error in the record, and therefore concur in the judgment of affirmance.

Mr. Justice SHAFTER did not participate in the trial or decision.